YOLANDA CORTESE *v.* PLANNING AND ZONING
BOARD OF APPEALS OF THE
TOWN OF GREENWICH
(SC 17370)

Sullivan, C. J., and Borden, Palmer, Vertefeuille and Zarella, Js.

412

Argued April 15—officially released July 12, 2005

*Aamina Ahmad,* assistant town attorney, for the appellant (defendant).

*John F. Slane, Jr.*, for the appellee (plaintiff).

*Opinion*

BORDEN, J. The dispositive issue in this appeal is whether the trial court properly held that the doctrine of municipal estoppel applied to the decision of the planning and zoning board of appeals upholding a cease and desist order issued by the municipality's zoning enforcement officer. The defendant, the planning and zoning board of appeals of the town of Greenwich, appeals from the judgment of the trial court sustaining an appeal by the plaintiff, Yolanda Cortese, of the defendant's decision upholding a cease and desist order issued by James Maloney, the zoning enforcement officer of the town of Greenwich. The defendant claims that the plaintiff failed to establish the requirements necessary to invoke municipal estoppel in this case. We agree and, accordingly, we reverse the judgment of the trial court.

Maloney had issued a cease and desist order to the plaintiff on the ground that the use of her property at 701 West Putnam Avenue in the town of Greenwich (town) violated the property's site plan. On the plaintiff's appeal to the defendant, it affirmed the cease and desist order. The trial court subsequently sustained the plaintiff's appeal from the defendant's decision. This appeal followed.[1]

The record reveals the following facts and procedural history. Although the property at issue in the present

---

[1] The Appellate Court granted certification to appeal pursuant to General Statutes § 8-8 (o), which provides in relevant part: "There shall be no right to further review [of the judgment of the trial court in a zoning appeal taken pursuant to § 8-8] except to the Appellate Court by certification for review, on the vote of two judges of the Appellate Court so to certify and under such other rules as the judges of the Appellate Court establish. . . ."

Following the grant of certification, the defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

case is located in a residential zone,[2] it has been used commercially by various owners since at least 1947, when the building currently located on the property was constructed to house a well drilling business. In 1992, the defendant granted a special exception and variance of use regulations to East Coast Consortium, Inc./Auto Excellence, the owner of the property, allowing it to convert the property from one nonconforming use to another nonconforming use under the purview of the planning and zoning commission of the town of Greenwich (commission). Shortly thereafter, the commission approved, with modifications, a special permit/site plan authorizing the property owner to convert the property from its nonconforming use as a well drilling business to a different nonconforming use as an automobile repair facility.

Because the plaintiff was aware that the property was legally nonconforming when she was considering its purchase for use in her oil delivery business, she hired James Sandy, a land use consultant and former town planner of Greenwich, to take the steps necessary to ensure that she could use the property as she intended. After discussions with Maloney about his client's intended use of the property, Sandy drafted a letter for Maloney's signature outlining that intended use.[3]

---

[2] The property is in a R-6 zone, which allows for multifamily residential use on 7500 square feet lots.

[3] The letter, which was written on Sandy's stationery and addressed to Maloney, provides as follows: "This is a letter to confirm our discussion relative to the above referenced property (also known as the Monies or the Muller property) presently occupied by Jonathan Wade and used for car prep and storage. The present user has been in violation of the approved site plan for a maximum of [twenty-two] vehicles on the site.

"My client, New England Oil, intends to purchase the property and use it in conformance with the approved site plan. In addition, they plan to screen the property replacing the plants that died and/or erect a stockade fence to protect the neighbors. Neighbors have already been contacted and have no objection to the proposed use. In summary my client agrees to do the following:

"1. Replace the dead and dying plants previously planted and/or erect a stockade fence to provide screening for the neighbors.

Maloney subsequently countersigned the letter, and the plaintiff, relying on Maloney's signature on the letter, purchased the property for the sum of $655,000. The plaintiff's use of the property to service and repair the oil delivery trucks of New England Oil and to garage those trucks overnight has continued from the time that she purchased the property in 1996, until the present.

In 2000, the plaintiff applied to the commission for a special permit/site plan to permit construction of two housing units in a new structure and office space and a housing unit in the existing structure on the property. On May 10, 2000, the commission notified the plaintiff that it had denied the site plan portion of her application.[4] In the letter notifying the plaintiff of its decision, the commission noted that it had found that the nonconforming use of the property "to park, repair and garage oil delivery trucks and repair trucks [had been] a change from the non-conforming use approved by the [c]ommission in 1992 that [had been] to operate a public auto repair and service facility . . . ." On July 19, 2000, Maloney notified the plaintiff that "the use of the building and property . . . for anything other than an automotive repair facility is a violation of the [municipal zone regulations]. Specifically, the use of the property

"2. It is not the intent to store large oil trucks outside but to keep them inside the building. The intent of New England Oil is that large trucks would be outside when they are awaiting repair or service, and the only vehicles that will be on site will be employee vehicles and those awaiting repair.

"3. Replace the existing lighting with lighting that meets the code (present lighting is unshielded and shines onto the neighbor's house and property.)

"4. Adhere to the other site plan conditions which have been ignored by past tenants.

"If you agree that this was what we discussed in reference to the above mentioned property, please sign below in the space provided. Thank you for your attention to this matter."

[4] The plaintiff's appeal of the commission's denial of her application was subsequently dismissed by the Superior Court. *Cortese* v. *Planning & Zoning Commission*, Superior Court, judicial district of New Britain, Docket No. CV 00-0505689 S (September 3, 2002).

as a depot for oil delivery trucks, employee parking, oil service vehicles and/or employees . . . are all violations of your approved use." Maloney also informed the plaintiff that his office would reinspect the property within thirty days to verify correction of the violations. Following an exchange of correspondence between Thomas Heagney, the plaintiff's attorney, and Maloney and correction of certain zoning violations unrelated to the present case, Maloney ultimately issued, on November 29, 2000, a cease and desist order to compel the plaintiff to stop garaging the oil delivery trucks on the property and to complete certain requirements of the 1992 special permit/site plan.[5]

The plaintiff appealed the cease and desist order to the defendant. Both Sandy and Maloney testified at the public hearing on the appeal, and both agreed that the plaintiff's use of the property to repair the oil delivery trucks was consistent with the nonconforming use authorized by the approval of the 1992 special permit/ site plan. Maloney disagreed, however, that either the letter that he had signed or the 1992 special permit/site plan authorized the plaintiff to garage those oil delivery trucks not being serviced or repaired on the property. The defendant denied the plaintiff's appeal on the following grounds: "The [plaintiff's] use of the subject property is not in compliance with the approved site plan which authorizes repair of motor vehicles but not garaging or storage of motor vehicles for other purposes."

The plaintiff appealed from the defendant's decision to the Superior Court, which concluded that "[t]he record in this case clearly supports the [defendant's] finding that the plaintiff's use of the property was not in conformance with the 1992 approved site plan." Nev-

---

[5] Completion of the special permit/site plan requirements is not at issue in this appeal.

ertheless, the trial court rendered judgment for the plaintiff, concluding that the town was equitably estopped from enforcing the cease and desist order. The basis for that ruling was that Maloney, an authorized agent of the town, had undertaken an action, namely, signing the letter drafted by Sandy, intended to induce the plaintiff to believe that certain facts existed and to act on that belief, the plaintiff had relied on those facts to her injury, and it would be inequitable and oppressive to prevent the plaintiff from continuing to use the property, which she had purchased for $655,000,[6] in the manner in which she had been using it uninterrupted for several years.

On appeal, the defendant contends that the trial court improperly applied the doctrine of municipal estoppel to the enforcement of the cease and desist order. The defendant argues that the doctrine of municipal estoppel is inapplicable in the present case for two reasons: (1) the plaintiff failed to prove that her violations of the zoning regulations were unjustifiably induced by Maloney's act of signing the letter drafted by Sandy because the letter failed clearly to inform Maloney that the plaintiff intended to garage the oil trucks on the property; and (2) in light of the plaintiff's attempts to expand her use of the property, she failed to show so substantial a loss that enforcement of the cease and desist order would be highly inequitable or oppressive.[7] We conclude, without consideration of whether the plaintiff's purchase of the property was unjustifiably

---

[6] Although the trial court's memorandum of decision stated that the plaintiff paid $650,000 for the property, the record clearly establishes that she paid $655,000. This minor discrepancy has no effect on the outcome of this opinion.

[7] The defendant also argues that the trial court's decision, by lowering the threshold for applying municipal estoppel, restricts the ability of municipalities to compel termination of noncompliance with zoning regulations. Because we reverse the trial court's judgment on other grounds, we need not reach this argument.

induced by Maloney's actions, that the trial court improperly determined that enforcement of the cease and desist order would result in "a substantial loss for the purpose of establishing municipal estoppel."

The contours of the application of the doctrine of municipal estoppel to zoning regulations are well established in our jurisprudence. "[I]n special circumstances, a municipality may be estopped from enforcing its zoning regulations. . . . In municipal zoning cases, however, estoppel may be invoked (1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations. . . . Moreover, it is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge. . . .

"To summarize, in order for a court to invoke municipal estoppel, the aggrieved party must establish that: (1) an authorized agent of the municipality had done or said something calculated or intended to induce the party to believe that certain facts existed and to act on that belief; (2) the party had exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) the party had changed its position in reliance on those facts; and (4) the party would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents." (Citations omitted; internal quotation marks omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 246–47, 662 A.2d 1179 (1995).

Furthermore, because municipal estoppel should be invoked only with great caution, our case law clearly

imposes a substantial burden of proof on the party who seeks to do so. *Dornfried* v. *October Twenty-Four, Inc.*, 230 Conn. 622, 636, 646 A.2d 772 (1994). Specifically, in the present case, the plaintiff was confronted with the burden to prove, inter alia, so substantial a loss as a result of enforcement of the cease and desist order that such enforcement "would, in light of all the circumstances, be highly inequitable or oppressive." (Internal quotation marks omitted.) Id.

The trial court's determination that enforcement of the cease and desist order would result in the plaintiff experiencing such a loss "is a finding of fact . . . that will not be overturned unless it is clearly erroneous in light of the evidence in the whole record. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) Id. Our review of the record reveals no evidence that the plaintiff would suffer a substantial loss as a result of enforcement of the cease and desist order.

In *Dornfried*, we addressed the issue of "what constitutes a substantial loss for purposes of municipal estoppel . . . ." Id., 639. Although we made no attempt to define a specific level of economic loss that would qualify as substantial, we noted that "the defendants [had] offered no evidence of any out of pocket investment, such as a capital investment in equipment, a building, or real property, *that would be lost* if the town zoning regulation were enforced." (Emphasis added.) Id., 640. In contrast, we referred to the definition and discussion of the concept of substantial loss as developed by the Illinois courts in *Cities Services Oil Co.* v. *Des Plaines*, 21 Ill. 2d 157, 161, 171 N.E.2d 605 (1961), and the cases cited therein. *Dornfried* v. *October*

*Twenty-Four, Inc.*, supra, 230 Conn. 639–40. In each of the Illinois cases, the aggrieved party had made significant economic investments in improvements to property that would have been rendered useless or had to be destroyed if municipal estoppel had not been invoked. Id..

In the present case, the trial court found that "[the plaintiff] purchased the property in 1996 and has used it uninterrupted until 2002. She paid the sum of [$655,000] for the property. This amounts to a substantial loss for the purpose of establishing municipal estoppel." Although the record supports the plaintiff's uninterrupted use and her purchase price for the property, neither these facts nor other facts in the record support a finding of substantial loss for the purpose of establishing municipal estoppel. The plaintiff's loss of the benefit she received from her uninterrupted use of the property to garage her oil delivery trucks in violation of the zoning regulations fails to support such a finding. See id., 640. Proving the purchase price of the property fails to do so as well because no basis exists in the record for equating the purchase price of the property with the plaintiff's loss for the purpose of finding a substantial loss.

Although the purchase price of the property represents a significant out-of-pocket investment on the part of the plaintiff, the record is completely silent on the extent to which that investment would be *lost* if the municipality was not estopped from enforcing the cease and desist order. Certainly, the record does not support the trial court's finding that the plaintiff's entire investment would be lost. Although the plaintiff testified before the trial court that she would not have purchased the property if Maloney had not signed the letter drafted by Sandy, Heagney testified, at the public hearing on the appeal before the defendant, that "[the plaintiff] has one mechanic and one assistant on a part-time basis

that works in the building [on the property]. She repairs only the company vehicles." Heagney further testified that "[t]he only thing that's done [on the property] is . . . the repair of the company vehicles and the storage of the trucks in the building at night." Thus, the property continues to possess economic value to the plaintiff as a service and repair facility for the company vehicles, which is a legal nonconforming use of the property, even if the cease and desist order prevents her from garaging functional vehicles on the property overnight. Furthermore, the plaintiff offered no evidence that she made capital investments in the property to make it suitable for garaging the oil delivery vehicles that would be rendered useless or have to be destroyed as a result of the cease and desist order. Finally, the record is devoid of any evidence of a diminution in the property's value arising from an inability to garage oil delivery trucks on the premises. Without some evidence of a substantial *loss* as a result of the defendant's action, not just a substantial investment on the part of the plaintiff, it was improper for the trial court to invoke the doctrine of municipal estoppel.

Although the plaintiff's complaint alleged that "[the defendant's] decision changed the use of the property which had previously been approved causing economic losses to the plaintiff," and her brief to the trial court claimed that "[s]he will clearly suffer serious business difficulties if she cannot store her trucks in the garage at night," she neither offered any evidence nor made any attempt to quantify her potential economic losses. At oral argument before this court, the plaintiff's counsel argued that "[the property's value is] not the point. The point is that [the plaintiff] bought a specific piece of property to do a specific thing for her business. Whether that, through dumb luck, turns out to be profitable still doesn't solve her problem with her oil trucks, which is why she bought the property." This argument

fails to address the fourth element that an aggrieved party must establish for a court to invoke municipal estoppel, namely, that "the party would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents." *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 247. Although an aggrieved party may be able to establish a substantial loss even where the value of the property has increased since its purchase, either because the municipality's action will cause the plaintiff to lose the value of capital investments on the property or because the increase in property value would be greater without the municipality's action, the party still must meet its burden of establishing such a loss. The plaintiff failed to do so in the present case.

The judgment is reversed and the case is remanded with direction to render judgment dismissing the plaintiff's appeal.

In this opinion the other justices concurred.