CONSERVATION COMMISSION OF THE TOWN OF
FAIRFIELD *v.* RED 11, LLC
(AC 30212)

DiPentima, Gruendel and Lavery, Js.

378

Argued October 22, 2009—officially released February 16, 2010

*J. Christopher Rooney*, with whom was *Anne D. Peterson*, for the appellant (defendant).

*Noel R. Newman*, for the appellee (named plaintiff).

*Edward V. O'Hanlan*, with whom, on the brief, was *Thomas J. Donlon*, for the appellee (intervening plaintiff Wilmington Trust Company).

*Opinion*

DiPENTIMA, J. In *Red 11, LLC* v. *Conservation Commission*, 117 Conn. App. 630, 980 A.2d 917, cert. denied, 294 Conn. 918, 984 A.2d 68 (2009), this court answered the question of whether a conservation commission properly had issued a cease and desist order prohibiting a property owner from conducting certain activities in wetlands. We concluded that the owner's activities did not fall within the farming exception to wetlands regulation and therefore required a permit. We now face the question of whether the court properly issued a permanent injunction prohibiting the property owner from engaging in those activities and ordering injunctive relief. The defendant property owner, Red 11, LLC,

appeals from the judgment of the trial court rendered in favor of the plaintiff, the conservation commission of the town of Fairfield (commission). On appeal, the defendant claims that (1) the court improperly issued the injunctive relief because the commission lacked jurisdiction over the property, (2) the doctrine of municipal estoppel precluded the commission from ordering restoration of the property and (3) the court abused its discretion by issuing the permanent injunction. We affirm the judgment of the trial court.

We previously set forth the following facts. "On May 11, 2001, Salvatore K. DiNardo obtained an eighteen acre parcel of land located at 1159 Redding Road in Fairfield. DiNardo then conveyed title to the [defendant], a limited liability company of which DiNardo is the managing member and principal. The property contains three distinct wetlands and watercourse areas: the Redding Road area, the vernal pool and the Rider's Lane area. In September, 2001, Edward Jones, a wetlands compliance officer, issued a cease and desist order advising DiNardo to stop activities on the property that were impacting wetlands and watercourses.

"The commission held a show cause violation hearing on September 20, 2001, at which DiNardo stated that he intended to create a farm on the property. Pursuant to [General Statutes] § 22a-40 (a) (1) and § 4.1.a of the Fairfield inland wetlands and watercourses regulations (Fairfield regulations), farming activities in wetlands and watercourses are permitted expressly as of right. The commission continued the matter for one month to afford DiNardo time to submit a plan of his proposed activities pursuant to § 4.4 of the Fairfield regulations.

"The matter returned to the commission on October 18, 2001. Raymond Rizio, an attorney, appeared on behalf of the [defendant] and DiNardo. Rizio emphasized that the property would be used as a farm. He

further represented that although he did not agree that the commission had the authority to condition such requirements, the [defendant] would install silt fencing and mulch around the disturbed areas to stabilize the land. Rizio further stated that if the [defendant] decided to pursue installation of a culvert and weir, it would return at a future date to seek approval from the commission. Rizio also agreed that, upon notice, the [defendant] would make the property available for inspection.

"The commission issued a declaratory ruling that 'the proposed farming activities, as set forth in the plan submitted by . . . DiNardo, excluding those areas where a culvert and weir are to be installed, were allowed as of right, and did not require a wetland permit, and the vernal pool cannot be filled in.' The commission also removed the cease and desist order with 'the request that the property owner honor the stipulations made this evening, including the stipulation whereby he agreed to install silt fencing to stabilize the area.' On October 22, 2001, the commission sent a letter to DiNardo detailing the terms of its decision.

"By a letter dated July 2, 2003, Marisa Anastasio, a wetlands compliance officer, issued another cease and desist order to the [defendant]. This letter acknowledged the October, 2001 declaratory ruling but alleged that the [defendant] had engaged in filling, piping, draining and excavating regulated wetlands and watercourses without a permit in violation of various sections of the Fairfield regulations. It also alleged that the [defendant's] representatives had denied access to the property so that observations of the property had been undertaken from adjacent properties and by helicopter surveillance.

"The commission held a hearing on August 7, 2003. Following Anastasio's presentation, representatives for

the [defendant] countered that the actions were permissible as farming activity. The commission found that the violations on the site, such as filling, draining and piping of regulated wetlands and watercourses, had and continue to have a significant and adverse impact on regulated wetlands and watercourses on and off the property. Accordingly, the commission sustained the cease and desist order dated July 2, 2003.

"The [defendant] filed an appeal to the Superior Court, arguing that the commission improperly sustained the cease and desist order. The [defendant] also argued that the commission violated its right to due process by denying it the ability to rebut the evidence and legal argument presented by the intervenors, Wilmington Trust Company (Wilmington) and James Caserta and Diane Caserta. On December 15, 2003, the court ordered the matter remanded to the commission to allow the [defendant] the opportunity to present rebuttal evidence. The commission opened the rebuttal hearing on March 4, 2004, and continued the matter until March 25, 2004. The commission modified its earlier findings with respect to a perimeter stone wall, but otherwise continued the existing cease and desist order on March 29, 2004. The [defendant] then filed a second appeal to the Superior Court claiming that the commission acted arbitrarily, capriciously, unlawfully and in abuse of its discretion by sustaining the March 29, 2004 cease and desist order.

"Anastasio issued a third cease and desist letter, dated June 16, 2004, as a result of violations 'existing on [the defendant's] property above and beyond those violations listed in the [March 29, 2004 cease and desist order].' Specifically, the letter alleged that the following activities had occurred on the [defendant's] property: (1) the use of wetlands soil for grading along the western part of the property; (2) the filling and grading of wetlands on the western part of the property; (3)

excavation of wetland soil for the creation of a ditch through the Redding Road areas, resulting in additional drainage and diversion of water into the storm sewer pipe system; (4) discharge of silted water and mud as a result of the failure to install sedimentation and erosion controls; (5) the removal of additional vegetation; (6) grading throughout the property using wetlands soils; and (7) earth moving of large wetlands soil stockpile near the Redding Road areas. This letter further indicated that on May 6, 2004, the [defendant] had agreed to submit a performance bond and confirm an environmental site monitor and that these obligations had not been met.

"After a hearing, the commission adopted the proposed findings of fact set forth in Anastasio's letter, added certain requirements to the proposed corrective measures and affirmed the violations as listed in the June 16, 2004 letter. The [defendant] filed a third appeal to the Superior Court, again arguing that the commission acted arbitrarily, capriciously, unlawfully and in an abuse of its discretion in issuing the July 2, 2004 cease and desist order.

"The court consolidated the three appeals and issued three memoranda of decision on April 4, 2007, dismissing the plaintiff's appeals. With respect to the first two appeals, stemming from the July, 2003 and March, 2004 cease and desist orders, the court determined that the record supported the conclusion that regulated activities, such as the filling, draining and piping of the wetlands and watercourses had occurred on the property without a required permit. The court further concluded that these activities did not fall within the farming exception set forth in § 22a-40 and § 4.1 of the Fairfield regulations. As to the July, 2004 cease and desist order, the court stated that the record supported the commission's determination that regulated activities, 'such as earth moving, excavating, filling, grading, draining and

vegetation removal had occurred on the property despite the imposition of the March 29, 2004 cease and desist order. In addition, the record evidence indicates that ongoing work continued on the property during May and June, 2004, and [that] no site monitor confirmation or performance bond had been submitted, despite the representation made at the May 6, 2004 site visit.' " *Red 11, LLC* v. *Conservation Commission*, supra, 117 Conn. App. 633–37.

During the events described previously, the commission filed a verified complaint on August 5, 2004, seeking a temporary and permanent injunction prohibiting and restraining the defendant from undertaking any further construction activities at 1159 Redding Road and from any further violations of the General Statutes and Fairfield regulations. Soon thereafter, Wilmington successfully moved to intervene as a plaintiff. On August 15, 2006, the commission and Wilmington filed a four count amended complaint. The first count, filed by the commission alone, alleged that the defendant continually had violated the cease and desist orders. In addition to the injunctive relief, the commission also requested an order that any violations be corrected or removed and an assessment of civil penalties pursuant to General Statutes § 22-44 (b). The remaining three counts, filed by Wilmington, sought similar relief, as well as damages and costs.[1]

On April 4, 2007, following a hearing, the court issued a memorandum of decision. It imposed a temporary injunction prohibiting the defendant from any further construction activities at 1159 Redding Road and from any further violations of the General Statutes or the Fairfield regulations. It also ordered that a subsequent

---

[1] Specifically, Wilmington brought count two pursuant to General Statutes § 22a-44, count three pursuant to General Statutes § 22a-16 and count four as a common-law trespass action.

evidentiary hearing would be held to determine the restoration of the site, civil penalties, costs, fees, expenses and attorney's fees.

Following the evidentiary hearing, the court issued a second memorandum of decision on July 25, 2008. It rejected the defendant's restoration plan that called for "the creation of a cranberry bog and [the] installation of an extensive piping system." Specifically, it stated that "[t]he court does not consider this a restoration plan." The court concluded that the plan described through the testimony of Robert Jontos represented a legitimate restoration plan for the damage. The court also awarded civil penalties in the amount of $25,000. The court additionally awarded attorney's fees to the town of Fairfield and Wilmington in an amount to be determined later.[2] Finally, the court permanently restrained and enjoined the defendant from any further violation of the General Statutes, the Fairfield regulations or the cease and desist orders that were the subject of the underlying litigation and detailed in our prior opinion. This appeal followed.

I

The defendant first claims that the court improperly issued a temporary or permanent injunction because the commission lacked jurisdiction over the property. Specifically, it argues that because the commission had issued a declaratory ruling in October, 2001, that the defendant's proposed farming activities were exempt from regulation under the Inland Wetlands and Watercourses Act; General Statutes §§ 22a-36 through 22a-45; the commission had no jurisdiction over the property. As a result, the defendant maintains that the commission had no basis to seek, and the court had no

---

[2] Although the amount of attorney's fees has yet to be determined, we have jurisdiction to consider the defendant's appeal because the judgment on the merits constitutes a final judgment. See *Paranteau* v. *DeVita*, 208 Conn. 515, 523, 544 A.2d 634 (1988).

basis to grant, injunctive relief for a regulatory violation. Finally, the defendant contends that its activity fell within the statutory farming exemption[3] to wetlands regulation[4] and not within the five limitation exceptions to that exemption.[5]

In our earlier decision, we considered and rejected these claims by the defendant in the present appeal. *Red 11, LLC* v. *Conservation Commission*, supra, 117 Conn. App. 638–47.[6] For the reasons set forth in that opinion, we conclude that the commission had jurisdiction over the property and had a basis to seek injunctive relief.

## II

The defendant next claims that the doctrine of municipal estoppel precluded the commission from ordering the restoration of the property. Specifically, it argues that as a result of the October, 2001 declaratory ruling, the commission was estopped from seeking restoration of the property. We decline to address this claim on the basis of an inadequate record.

---

[3] General Statutes § 22a-40 (a) provides in relevant part that "[t]he following operations and uses shall be permitted in wetlands and watercourses as of right: (1) Grazing, farming, nurseries, gardening and harvesting of crops and farm ponds of three acres or less essential to the farming . . . ."

[4] General Statutes § 22a-32 provides in relevant part that "[n]o regulated activity shall be conducted upon any wetlands without a permit. . . ."

[5] General Statutes § 22a-40 (a) (1) provides in relevant part: "The provisions of [the farming exemption] shall not be construed to include road construction or the erection of buildings not directly related to the farming operation, relocation of watercourses with continual flow, filling or reclamation of wetlands or watercourses with continual flow, clear cutting of timber except for the expansion of agricultural crop land, the mining of top soil, peat, sand, gravel or similar material from wetlands or watercourses for the purposes of sale . . . ."

[6] At oral argument before this court, counsel for the defendant acknowledged that, given our earlier decision, several of its claims had been determined and that only the issues of municipal estoppel and the propriety of the injunctive relief remained.

"The standards governing the application of equitable estoppel are well established. There are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done. . . . [I]n order for a court to invoke municipal estoppel, the aggrieved party must establish that: (1) an authorized agent of the municipality had done or said something calculated or intended to induce the party to believe that certain facts existed and to act on that belief; (2) the party had exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) the party had changed its position in reliance on those facts; and (4) the party would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents." (Citation omitted; internal quotation marks omitted.) *O'Connor* v. *Waterbury*, 286 Conn. 732, 757–58, 945 A.2d 936 (2008); see also *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 246–47, 662 A.2d 1179 (1995). Our Supreme Court has cautioned that the doctrine of municipal estoppel should be invoked only with great caution, and, therefore, a substantial burden of proof is imposed on the party who seeks to do so. *Cortese* v. *Planning & Zoning Board of Appeals*, 274 Conn. 411, 418, 876 A.2d 540 (2005); see also *Zoning Commission* v. *Lescynski*, 188 Conn. 724, 731–32, 453 A.2d 1144 (1982) (municipal estoppel applied with great caution, only when resulting violation has been unjustifiably induced by agent having authority in such matters and when special circumstances make it highly inequitable or oppressive to enforce the regulations).

This court has recognized that "[a] claim of municipal estoppel is . . . inherently fact bound." *Collins Group, Inc.* v. *Zoning Board of Appeals*, 78 Conn. App. 561, 576, 827 A.2d 764, cert. denied, 266 Conn. 911, 832 A.2d 68 (2003). "The party claiming estoppel . . . has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *O'Connor* v. *Waterbury*, supra, 286 Conn. 758.

In the present case, the memorandum of decision did not address or discuss the claim of municipal estoppel. The defendant invoked Practice Book § 66-5 and filed a motion for articulation of the court's decision. The motion sought, inter alia, an articulation of why the commission was not estopped from obtaining a permanent injunction due to the 2001 declaratory ruling. The court denied the motion, and the defendant filed no motion for review of that decision.

"Practice Book § 66-7 provides in relevant part: Any party aggrieved by the action of the trial judge as regards . . . articulation under Section 66-5 may, within ten days of the issuance of notice of the order sought to be reviewed, make a written motion for review to the court, to be filed with the appellate clerk, and the court may, upon such a motion, direct any action it deems proper." (Internal quotation marks omitted.) *McCook* v. *Whitebirch Construction, LLC*, 117 Conn. App. 320, 332, 978 A.2d 1150, cert. denied, 294 Conn. 932, 987 A.2d 1029 (2009); see also *Rivnak* v. *Rivnak*, 99 Conn. App. 326, 334–35, 913 A.2d 1096 (2007). "[P]roper utilization of the motion for articulation [and the motion for review] serves to dispel . . . ambiguity by clarifying the factual and legal basis upon which the trial court

rendered its decision, thereby sharpening the issues on appeal. . . . The burden of securing an adequate record for appellate review of an issue . . . rests with the . . . appellant. . . . Because it is the . . . appellant's responsibility to provide this court with an adequate record for review . . . we will not remand a case to correct a deficiency the . . . appellant should have remedied." (Internal quotation marks omitted.) *Phillips* v. *Phillips*, 101 Conn. App. 65, 71–72 n.1, 922 A.2d 1100 (2007); see also *Ramondetta* v. *Amenta*, 97 Conn. App. 151, 168, 903 A.2d 232 (2006).

In the present case, the defendant failed to seek further review following the denial of its motion for articulation. We are left with a record that is inadequate to review the defendant's claim of municipal estoppel.

### III

The defendant's final claim is that the court abused its discretion by issuing the permanent injunction. Specifically, the defendant argues that the court improperly ordered, as injunctive relief, a costly restoration plan that failed to consider the equities of the case.[7] We are not persuaded.

The following additional facts are necessary for the resolution of the defendant's claim. Jontos testified that he had been retained by the defendant to develop a restoration plan for the Redding Road wetlands. This plan encompassed sedimentation and erosion control, a storm water management plan, and a wetland nursery plan. The court accepted the plan described by Jontos, subject to certain modifications.[8]

---

[7] The defendant also argued that there was no evidence presented that it had violated § 22a-40 (a) (1). As noted in part I of this opinion, we conclusively addressed that claim in our earlier opinion. See *Red 11, LLC* v. *Conservation Commission*, supra, 117 Conn. App. 630.

[8] These modifications were the removal of the existing piping system, the replacement of nonwetlands soils with certain wetlands soils and the conditional installation of a weir only upon approval by the commission.

On appeal, the defendant claims that the court abused its discretion by adopting Jontos' proposal as the restoration plan. It maintains that the plan presented at the permanent injunction hearing by David Cameron offered a less expensive option.[9] The Cameron plan used a cranberry bog, built on one third to one half of the Redding Road wetlands, to replicate the functions of the wetlands that had been damaged by the defendant's activities. It also contained a pump system to remove water when necessary from the Redding Road wetland to the vernal pool.

"A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion." (Internal quotation marks omitted.) *Ventres* v. *Goodspeed Airport, LLC*, 275 Conn. 105, 148, 881 A.2d 937 (2005), cert. denied, 547 U.S. 1111, 126 S. Ct. 1913, 164 L. Ed. 2d 664 (2006).

The authority for the injunctive relief in the present case does not originate from the common law. General Statutes § 22a-44 (b) provides in relevant part: "The Superior Court, in an action brought by the commissioner, municipality, district or any person, shall have jurisdiction to restrain a continuing violation of said sections, to issue orders directing that the violation be corrected or removed and to assess civil penalties pursuant to this section. . . ." In our jurisprudence, this distinction is significant. "[W]here a statute authorizes a municipality or public entity to seek an injunction in order to enforce compliance with a local zoning ordinance, but says nothing about the injury caused, the

---

[9] During cross-examination, Cameron estimated the cost of his plan to be $114,730 while the Jontos plan would be approximately $300,000.

municipality is not required to show irreparable harm or unavailability of an adequate remedy at law before obtaining an injunction; rather, all that must be shown is a violation of the ordinance." (Internal quotation marks omitted.) *Greenwich* v. *Kristoff*, 2 Conn. App. 515, 521, 481 A.2d 77, cert. denied, 194 Conn. 807, 483 A.2d 275 (1984); see also *Conservation Commission* v. *Price*, 193 Conn. 414, 429–30, 479 A.2d 187 (1984); R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 41:6, p. 453. Nevertheless, the trial court is not "mechanically obligated to grant an injunction for every violation of law. . . . Put another way, we do not view the statutory grant of jurisdiction as destroying the discretion of a trial court in every case . . . ." (Citations omitted; internal quotation marks omitted.) *Conservation Commission* v. *Price*, supra, 430; see also *Monroe* v. *Renz*, 46 Conn. App. 5, 15, 698 A.2d 328 (1997).

The court heard evidence that construction of the cranberry bog would require a substantial amount of nonwetlands soil to be brought onto the property. One of the defendant's witnesses, Kenneth J. Wagner, stated that the Cameron plan would restore the function of wetlands but described it as "unusual" in that it partially was an agricultural use. He further acknowledged that this agricultural feature would be "of interest" to the defendant. Last, Wagner stated that the cranberry bog would not serve as restoration but, rather, a combination of rehabilitation and mitigation.

On the basis of the foregoing, we cannot conclude that the court abused its discretion in determining that creation of the cranberry bog did not constitute a restoration plan. We are mindful of the court's finding that the activities of the defendant, including excavation and removal of wetlands soils, natural stones and boulders,

coupled with the installation of a piping system, effectively destroyed the function of the wetlands. This conduct, in the words of the court, was "egregious, serious and resulted in significant injury to the wetland[s] resources of the state of Connecticut. This injury was made much worse by the defendant's refusal to comply with multiple cease and desist orders . . . . The defendant continued to carry on with its regulated activities despite the issuance of cease and desist orders, demonstrating a lack of respect for the zoning commission's authority." Additionally, the defendant's actions "ignored and defeated" the legislative intent of wetlands regulation. The court further found that restoration was possible, and that the purpose of said restoration was "to put the property back into the condition it was before the violations." It also found that the cranberry bog was not a restoration. It is axiomatic that the credibility of witnesses is the sole province of the trial court. See, e.g., *Commission on Human Rights & Opportunities* v. *Sullivan*, 285 Conn. 208, 233, 939 A.2d 541 (2008); *Pollio* v. *Conservation Commission*, 32 Conn. App. 109, 115, 628 A.2d 20 (1993).

It is clear from our review of the record that the court weighed the equities of the situation in ordering the injunctive relief to achieve restoration of the property. Specifically, it considered the actions and course of conduct of the defendant in causing the harm to the wetlands, as well as the various proposals of restoration. The court, after hearing evidence, credited the Jontos plan as the appropriate approach to restore the wetlands on the defendant's property. Similarly, it rejected the Cameron plan. We conclude that the injunctive relief order by the court did not constitute an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.