WALLINGFORD TURNPIKE, LLC *v.* WEBSTER
INSURANCE, INC.
(AC 30437)

Harper, Robinson and Lavery, Js.

Argued November 19, 2009—officially released August 3, 2010

*Katherine H. Hagmann*, with whom was *Amy Blume*, for the appellant (plaintiff).

*David A. DeBassio*, for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiff, Wallingford Turnpike, LLC, appeals from the judgment of the trial court in favor of the defendant, Webster Insurance, Inc., in a breach of contract action that arose out of the defendant's early termination of a commercial office lease. On appeal, the plaintiff claims that the court improperly concluded that the defendant was no longer bound by the obligations of the lease on the basis of its asserted special defenses. Specifically, the plaintiff avers that the court improperly concluded that (1) the defendant was constructively evicted and (2) the defendant was not obligated to comply with the terms of the lease because the plaintiff had breached the lease's covenant of quiet enjoyment. Because we conclude that the record is inadequate for our review, we affirm the judgment of the trial court.

The following stipulated facts are pertinent to our resolution of the plaintiff's appeal. The respective predecessors in interest of the parties entered into a lease for commercial office space located in Wallingford on September 26, 1995. That lease was amended twice by supplemental lease agreements, first in 1999 and again in 2001. Although the defendant had moved its operations out of the office space prior to February 20, 2007, it nevertheless continued to fulfill its obligations under the lease until April 30, 2007. On February 20, 2007, the defendant was notified that several unauthorized people—all of whom had been previous subcontractors of the plaintiff, though none of whom had been authorized by either party to be on the premises at that time— were occupying the space being leased to the defendant. Further investigation revealed that the subcontractors

had converted a maintenance closet into a working shower and some office space into bedrooms. The defendant notified the plaintiff of the situation, and the plaintiff subsequently had the subcontractors and their belongings removed from the space being leased to the defendant. The defendant notified the plaintiff that it would no longer be occupying the space as of April 30, 2007, and that it would not be responsible for the costs associated with removing the alterations made by the subcontractors. This action followed.

On April 3, 2008, the court held a hearing, during which time both parties were permitted to present oral argument. Although no witnesses testified, the parties filed a stipulation of facts that was supported by various exhibits. A subsequent hearing was held before the court to resolve a few outstanding questions of fact that the court viewed as essential to its resolution of the case. On September 19, 2008, the court rendered judgment, stating: "The court has considered the stipulation of facts, the exhibits and the legal memoranda. The court has concluded that the plaintiff may be entitled to recover payment for use and occupancy from its subcontractor[s] as they converted the commercial space to residential space. However, under the facts and circumstances of this case, the plaintiff is not entitled to damages as claimed from the defendant. Accordingly, judgment for the defendant." Although the plaintiff filed a motion for articulation, the court denied the motion, and the plaintiff failed to file a motion for review with this court.

We begin by noting that it is unclear from the court's memorandum of decision which legal theory it relied on to resolve the claims before it. By way of example, it is unclear whether the court concluded that the plaintiff had failed to make out a prima facie case, whether the defendant had proved one of its special defenses or whether the court decided the case on the basis of

a legal theory it raised sua sponte. This ambiguity is furthered by the court's use of the word "may" in the judgment to indicate that, to the extent that the plaintiff had a claim, it was against the subcontractors. Indeed, the court did not state a legal theory imputing liability to the subcontractors and failed to explain how any putative liability on the part of the subcontractors affected the plaintiff's claims against the defendant in this case. Moreover, because the subcontractors were not parties to this action and the language in the judgment regarding potential claims that the plaintiff might have against the subcontractors was irrelevant to the legal issues between the actual parties, this language was mere dicta. Accordingly, the record does not reveal the legal basis for the court's judgment.[1]

Although the plaintiff argues that we should nevertheless reach the merits of its appeal because the court's reference to the subcontractors in its judgment confirms that the court relied on one of the defendant's special defenses to reach its conclusion, we decline to engage in such conjecture. As we often have observed: "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the appellant's claim] would be entirely speculative." (Internal quotation marks omitted.) *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 608–609, 710 A.2d 190 (1998). Furthermore, "Practice Book § 66-7 provides in relevant part: Any party aggrieved by the action of the trial judge as regards . . . articulation under Section 66-5 may, within ten days of the issuance

---

[1] Moreover, we note that the plaintiff agrees with our assessment in this regard. During oral argument before this court, the plaintiff conceded that the court could have based its decision on any one of the special defenses asserted by the defendant.

of notice of the order sought to be reviewed, make a written motion for review to the court, to be filed with the appellate clerk, and the court may, upon such a motion, direct any action it deems proper. . . . [P]roper utilization of the motion for articulation [and the motion for review] serves to dispel . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . . The burden of securing an adequate record for appellate review of an issue . . . rests with the . . . appellant. . . . Because it is the . . . appellant's responsibility to provide this court with an adequate record for review . . . we will not remand a case to correct a deficiency the . . . appellant should have remedied." (Citations omitted; internal quotation marks omitted.) *Conservation Commission* v. *Red 11, LLC*, 119 Conn. App. 377, 387–88, 987 A.2d 398, cert. denied, 295 Conn. 924, 991 A.2d 566 (2010). "[W]e will, in the absence of a motion for articulation [or a motion for review], assume that the trial court acted properly." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 789, 804 A.2d 889 (2002). Accordingly, because the record does not reveal the basis for the court's judgment, and the plaintiff failed to file a motion for review, we are unable to review this claim.

The judgment is affirmed.