FORREST E. CRISMAN, JR. *v.* ZONING BOARD OF
APPEALS OF THE TOWN OF MORRIS
(AC 33393)
(AC 33394)

Lavine, Robinson and Alvord, Js.

Argued April 24—officially released July 24, 2012

*Franklin G. Pilicy*, for the appellant in AC 33393 (intervening defendant).

*Peter C. Herbst*, with whom was *James P. Steck*, for the appellee-cross appellant in AC 33393 and the appellee in AC 33394 (plaintiff).

*Steven E. Byrne*, for the appellant in AC 33394 (named defendant).

*Opinion*

ALVORD, J. The defendant zoning board of appeals of the town of Morris (board) and the intervening defendant, David M. Geremia, filed separate appeals from the judgment of the trial court sustaining the administrative appeal of the plaintiff, Forrest E. Crisman, Jr., from the board's decision upholding a cease and desist order issued by the town's zoning enforcement officer. On appeal, Geremia claims that the court improperly concluded that the plaintiff proved his municipal estoppel

claim. Similarly, the board claims that the court improperly determined that the doctrine of municipal estoppel was applicable under the circumstances of this case and additionally claims that the court improperly concluded that the plaintiff could complete construction of the structure that was the subject of the cease and desist order.[1] We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. The plaintiff owns property on the east shore of Bantam Lake in Morris located in the lake residential district. The primary dwelling on the property is less than 800 square feet in size. Prior to December, 2007, a one car garage erected circa 1900 also was located on the plaintiff's property. The garage was partially situated within an area that became the right-of-way for a town road. At that point in time, the garage became a preexisting, legal nonconforming structure. In December, 2007, a tree fell on the garage and caused substantial damage.

Later in December, 2007, shortly after the tree damaged the garage, the plaintiff met with the town's zoning enforcement officer, Leon Bouteiller. The plaintiff wanted to obtain the requisite permits and approvals for the replacement and enlargement of the garage. The plaintiff met with Bouteiller repeatedly to discuss the

---

[1] The plaintiff filed a cross appeal, claiming that the court improperly determined that (1) the underlying zoning permit, which had never been appealed, could be reviewed by the board and (2) the plaintiff was not prejudiced by the board's action in upholding the cease and desist order on grounds that were unrelated to those raised by that order.

Because the plaintiff's appeal was sustained by the trial court, he was not aggrieved by the trial court's decision for purposes of filing a cross appeal. This court, and the Supreme Court, in similar circumstances, have treated a cross appeal as an argument setting forth alternate grounds for affirming the trial court's judgment. See, e.g., *Wesley* v. *Schaller Subaru, Inc.*, 277 Conn. 526, 529 n.1, 893 A.2d 389 (2006).

We affirm the judgment of the trial court on the ground decided by the trial court, however, and it therefore is not necessary to address the plaintiff's alternate grounds.

project. Bouteiller, after eliciting information from the plaintiff, filled out the application for the zoning permit to allow construction of the new structure. The plaintiff and Bouteiller signed the application. Bouteiller issued the zoning permit on April 23, 2008, which approved the construction requested by the plaintiff.[2] The plaintiff provided the town's building inspector with architectural plans of the proposed structure in May, 2008, and began construction.

On July 15, 2008, Bouteiller, at the direction of the town's planning and zoning commission (commission), issued a cease and desist order to the plaintiff advising him that a two foot kneewall was being built that had not been shown on the approved site plan. On July 24, 2008, Bouteiller released the first cease and desist order and replaced it, again at the direction of the commission, with a second cease and desist order dated July 24, 2008. The second cease and desist order, which is the operative order for purposes of this appeal, ordered the plaintiff to stop construction for the following reason: "The April 23, 2008 Zoning Permit authorizes a 1450 square foot ground level single story garage addition. No Zoning Permit has been issued for any construction beyond 1450 square feet. All construction beyond the 1450 square feet and any other use other than a garage is in violation of the April 23, 2008 Zoning Permit." The plaintiff already had expended approximately $100,000 on the project by the time the cease and desist orders were issued.

On August 22, 2008, the plaintiff appealed to the board from the July 24, 2008 cease and desist order. See General Statutes § 8-7. The plaintiff and Bouteiller

---

[2] The April 23, 2008 zoning permit provided: "Restore existing non-conforming garage [and] build 1450 sq. ft. addition (28 x 63). As built survey required of foundation." The number "1450" was circled on the permit, and the notation "corrected to 1536" was written in the margin and initialed by Bouteiller.

addressed the board at its hearing held on the plaintiff's appeal. On November 25, 2008, the board voted to uphold the cease and desist order. The deliberation portion of that meeting was not recorded, however, and the minutes gave a cursory summary of the reasons for the board's decision. Notice of that decision was published on November 27, 2008, and the plaintiff filed a timely appeal with the Superior Court. See General Statutes § 8-8 (b). At the board's January 6, 2009 meeting, which was held after the filing of the plaintiff's appeal to the Superior Court, the board "corrected" the minutes of the November 25, 2008 meeting and identified the bases for the members' votes. From the members' comments in the "corrected" minutes, the consensus was that the cease and desist order had been properly issued because the plaintiff's proposed structure was not subordinate to the primary dwelling on the property and, therefore, was not a permissible accessory building.

This administrative appeal had been pending before the Superior Court for more than six months when Geremia, an abutting landowner, filed a motion to intervene as a party defendant. The court granted his motion, and the parties filed prehearing briefs setting forth their respective positions. On August 24, 2010, the court held a hearing. The plaintiff presented evidence as to his aggrievement, and, in furtherance of his equitable municipal estoppel claim, he presented evidence as to the expenses he had incurred in connection with the construction of his unfinished structure.[3] During the

[3] The parties agreed that the plaintiff could present evidence related to his expenditures with respect to this particular project, and the trial court allowed the plaintiff's testimony and the submission of exhibits. In appeals from zoning boards, additional evidence is permitted only under certain circumstances. See General Statutes § 8-8 (k), which provides in relevant part: "The court shall review the proceedings of the board and shall allow any party to introduce evidence in addition to the contents of the record if . . . (2) it appears to the court that additional testimony is necessary for the equitable disposition of the appeal. . . ."

course of the hearing, the parties agreed that it would be appropriate for the court to conduct a site visit. The court granted their request, stating that it would notify the parties after the visit was completed and that it would permit the filing of supplemental briefs. The court further indicated that it would schedule a second hearing date if it had questions or if it required additional oral argument.[4]

On January 11, 2011, the court issued its memorandum of decision. After finding that the plaintiff was statutorily aggrieved by the board's decision, the court summarized the parties' positions and addressed each claim. The court first determined that the board's decision to uphold the cease and desist order was based on grounds other than those specified in that order. Although the issue of whether the proposed structure should be characterized as an accessory building or the primary building was not raised in the cease and desist order, the matter had been discussed at the hearing before the board. The court noted that the plaintiff had not claimed unfair surprise or inadequate opportunity to respond to that issue when he appeared before the board. Accordingly, the court concluded that "the plaintiff was not prejudiced by the fact that the board's decision to uphold the cease and desist order was not strictly based on the points set forth in the [cease and desist] order." The court further found that there was sufficient evidence in the record to support the board's conclusion that the proposed building was not a permissible accessory building.

The court then addressed the plaintiff's municipal estoppel claim. After citing relevant case law, the court found that the plaintiff had satisfied all of the requirements necessary to invoke that doctrine. The court

---

[4] An additional hearing was held on December 21, 2010, at which time the court questioned the parties regarding their posthearing briefs and issues related to the site visit.

began its analysis by stating that the parties agreed that Bouteiller was the authorized agent of the municipality. The court then made the following factual findings. Bouteiller met with the plaintiff several times and was made aware of the projected size and uses to be made of the building, even though he did not see the architectural plans at the time he issued the zoning permit. Bouteiller did not see the architectural plans before issuing the zoning permit because they were prepared later for purposes of obtaining the building permit. Moreover, as explained by Bouteiller, the zoning regulations did not require that architectural plans be submitted for the issuance of a zoning permit for an accessory building. Furthermore, Bouteiller stated that even if the architectural plans had been made available to him, he would have concluded that the project was in full compliance with the zoning permit.

The court then made the following determinations: "Based on his many discussions with [Bouteiller], and after the zoning permit was issued, the plaintiff began construction on his proposed building. He obtained architectural drawings, incurred engineering expenses, took the steps necessary to install a new septic system, ordered building materials, and in summary expended more than $100,000 on the project prior to the issuance of the cease and desist orders. . . . For all of the foregoing reasons, the court finds that the board should be and is estopped from enforcing the cease and desist order." The defendants and the plaintiff filed the present appeals after this court granted their petitions for certification.

The dispositive issue in these appeals is whether the trial court correctly determined that the plaintiff proved his municipal estoppel claim, thereby precluding the enforcement of the cease and desist order that prohibited the construction of the plaintiff's proposed structure. The board argues that the court's factual findings

were clearly erroneous because the plaintiff induced Bouteiller to act on a misleading and incomplete application, and he failed to prove that he would suffer substantial harm if the cease and desist order was enforced. The board further claims that the court applied an inappropriate remedy and should have remanded the matter back to the board "for a more definitive statement . . . as to how much of the presently constructed garage addition could remain." Geremia, the abutting landowner, argues that the court's findings are clearly erroneous because there is compelling evidence in the record disputing what representations were made to the plaintiff by Bouteiller. He further claims that Bouteiller's statements at the zoning board hearing were not credible and that the plaintiff did not exercise due diligence in proceeding with the project. Finally, he argues that the plaintiff failed to demonstrate a substantial loss.

We first set forth the appropriate principles guiding our review. Our Supreme Court has acknowledged that there are situations where the doctrine of estoppel may be applicable to municipalities in the enforcement of zoning laws. See *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 204, 658 A.2d 559 (1995); *Dupuis* v. *Submarine Base Credit Union, Inc.*, 170 Conn. 344, 354, 365 A.2d 1093 (1976). "There are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done. . . . [I]n order for a court to invoke municipal estoppel, the aggrieved party must establish that: *(1) an authorized agent of the municipality had done or said something calculated or intended to induce the party to believe that certain facts existed and to act*

*on that belief; (2) the party had exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) the party had changed its position in reliance on those facts; and (4) the party would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents."* (Citation omitted; emphasis added; internal quotation marks omitted.) *O'Connor* v. *Waterbury,* 286 Conn. 732, 757–58, 945 A.2d 936 (2008).

"[B]ecause municipal estoppel should be invoked only with great caution, our case law clearly imposes a substantial burden of proof on the party who seeks to do so." *Cortese* v. *Planning & Zoning Board of Appeals,* 274 Conn. 411, 418–19, 876 A.2d 540 (2005). The question of whether a plaintiff has met his burden to establish the elements of estoppel is a question of fact. See *Russo* v. *Waterbury,* 304 Conn. 710, 737, 41 A.3d 1033 (2012). "[A] claim of municipal estoppel is . . . inherently fact bound. . . . The party claiming estoppel . . . has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Citation omitted; internal quotation marks omitted.) *Conservation Commission* v. *Red 11, LLC,* 119 Conn. App. 377, 387, 987 A.2d 398, cert. denied, 295 Conn. 924, 991 A.2d 566 (2010).[5]

---

[5] Because municipal estoppel is an equitable claim, it is for the trial court and not the board to determine whether the conduct of municipal officials justifies the invocation of the doctrine. See *Bianco* v. *Darien,* 157 Conn. 548, 554–55, 254 A.2d 898 (1969); *Collins Group, Inc.* v. *Zoning Board of Appeals,* 78 Conn. App. 561, 581, 827 A.2d 764, cert. denied, 266 Conn. 911, 832 A.2d 68 (2003).

In the present case, with respect to the first factor required to establish municipal estoppel, the court found that Bouteiller, as the town's zoning enforcement officer, was the authorized agent of the municipality who was responsible for issuing zoning permits.[6] Neither the board nor Geremia disputed that fact. The court further found that Bouteiller was aware that the plaintiff intended that the proposed structure would be more than one level and that it would have a roof and a deck. Bouteiller also knew that the total square footage of the building would be more than the amount entered on the permit.[7] The court further found that Bouteiller knew the uses that were planned for that building, which included a storage space, bathroom and a personal office or study. Although Bouteiller did not have the architectural plans when he issued the zoning permit, the court credited Bouteiller's clear statement that the project was in full compliance with the zoning regulations after he had the opportunity to review those plans at a later date. Significantly, Bouteiller unequivocally stated that he had not agreed with the commission's reasoning underlying the issuance of either of the two cease and desist orders served on the plaintiff. For those reasons, the court found: "[T]he [zoning enforcement officer], an agent of the town, took many actions and made many statements calculated to induce the plaintiff to believe that he was proceeding in compliance with the zoning regulations and to act on that belief."

The board and Geremia do not dispute that there is support in the record for the court's factual findings.

---

[6] "No building or other structure, or part thereof, shall be constructed, reconstructed, enlarged, extended, moved or structurally altered until a Zoning Permit has been approved by the Zoning Enforcement Officer." Morris Zoning Regs., art. I, § 3.

[7] Bouteiller explained at the zoning board hearing that the number he wrote on the permit was for the ground level footprint. Because there was to be no "living space" in the building, the zoning permit reflected the square footage of the foundation only.

Instead, they claim that there is conflicting evidence and that Bouteiller's statements were not credible. They maintain that Bouteiller was misled by the plaintiff's claim that he did not intend to use the proposed structure as the primary structure on his property. According to the defendants, the plaintiff's representation is belied by the fact that the size and layout of the building would lend itself to uses in violation of the zoning regulations. The court acknowledged these arguments, but it concluded that there was nothing in the record that indicated that the plaintiff had not been truthful with Bouteiller or the board. The plaintiff consistently had maintained that all of his proposed uses of the building were permissible uses under the town's zoning regulations.[8] Moreover, as noted by the court, if the plaintiff did proceed to use the structure in a way that was not permitted by the regulations, the town would have appropriate remedies available to it. See General Statutes § 8-12.

On the basis of this record, we cannot conclude that it was clearly erroneous for the court to find that the plaintiff met his burden of proof in establishing that Bouteiller, as an authorized agent of the town, made statements and took actions calculated to induce the plaintiff to believe that he was proceeding in compliance with the zoning regulations and to induce him to act on that belief. We will not second-guess the considered judgment of the trial court. It is axiomatic that "[t]he trial court is free to accept or reject, in whole or in part, the evidence presented by any witness, having the opportunity to observe the witnesses and gauge their credibility. . . . This court defers to the trial court's discretion in matters of determining credibility and the weight to be given to a witness' testimony. . . . We cannot retry the matter, nor can we pass on the

[8] The plaintiff's plans for the proposed building did not include bedrooms, a kitchen or a full bath.

credibility of a witness." (Internal quotation marks omitted.) *Rozsa* v. *Rozsa*, 117 Conn. App. 1, 10, 977 A.2d 722 (2009).[9]

With respect to the second factor required to establish municipal estoppel, the defendants challenge the court's determination that the plaintiff proved that he had exercised due diligence to ascertain the truth, that he did not know that his proposed structure was not a permissible accessory building and that he had no convenient means of acquiring that knowledge. Specifically, Geremia argues that the plaintiff did not exercise due diligence because he failed to disclose the total proposed floor area, he failed to contact Bouteiller for a site inspection when the foundation was completed, he failed to present the architectural plans to Bouteiller, and he failed to ask Bouteiller or any other municipal official whether his plans conflicted with the town's regulations on accessory structures. The board argues that the "plaintiff did not exercise due diligence to ascertain the truth but instead, actively misinformed various municipal officials in order to obtain the permits he needed to accomplish his grand scheme of constructing a resplendent residence on Bantam Lake instead of the modest garage addition [that] the zoning permit would allow."[10]

The court's determination that the plaintiff exercised due diligence is based on its findings, which are amply supported by the record, that: Bouteiller believed that the building and its intended uses were permissible under the regulations; Bouteiller worked closely with

[9] The trial court made its determinations from the evidence submitted at the court hearing and from its review of the return of record submitted by the board.

[10] We already have discussed the claim that the plaintiff misled Bouteiller and the board. The trial court, as the fact finder, found Bouteiller and the plaintiff to be credible.

the plaintiff in applying for and issuing the zoning permit; and the court's site visit revealed that the size of the proposed structure in itself was not a clear indication that it would not be considered an accessory building. Furthermore, the record reveals that Bouteiller's position at the time the zoning permit was issued, at the time the commission directed him to issue the cease and desist orders and at the time of the hearing before the board has been consistent. He stated that he knew of the plaintiff's intended plans and concluded that the proposed size and uses of the structure complied with the regulations. He also stated that even if he had seen the architectural plans before issuing the zoning permit, his conclusion as to compliance would remain the same. Accordingly, we conclude that the court's finding that "[t]here is no way that the plaintiff could have reasonably done any more than he did to learn what would be permissible uses for, and in, his proposed accessory building" was not clearly erroneous.

The defendants' next claim, directed to the fourth factor[11] required for establishing municipal estoppel, is that the court improperly found that the plaintiff would suffer a substantial loss if the municipality were able to negate the acts of Bouteiller, its agent, in issuing the zoning permit. The board and Geremia argue that the plaintiff's expenditures will not be forfeited entirely if the cease and desist order is upheld. They claim that the costs for engineering, architectural plans, the septic system and building materials would be necessary if the plaintiff proceeds with the construction of a permissible one-story garage.

---

[11] With respect to the third factor required for establishing municipal estoppel, the defendants argue that the court could not properly find that the plaintiff changed his position in reliance on Bouteiller's statements because there was conflicting evidence as to the actual statements made by Bouteiller or because Bouteiller was not credible. We previously discussed those claims and found them to be without merit.

In its memorandum of decision, the court found that the plaintiff expended more than $100,000 on the project prior to the issuance of the cease and desist orders. The court made the following determination: "The plaintiff changed his position in reliance on the issuance of the zoning permit and the assurances of the zoning enforcement officer. The court finds that he did so in good faith. If the municipality were to be able to negate the acts of its agent, under all of the circumstances of this case, the plaintiff would be subjected, wrongfully, to a very significant loss. Under these circumstances, for the town to enforce its zoning regulations, as it has chosen to interpret them in this case, would be highly inequitable and oppressive."

The court, in reaching its finding, considered the evidence at the board hearing, at which the plaintiff and Bouteiller spoke, and the plaintiff's testimony at the court hearing on August 24, 2010. Additionally, the plaintiff submitted seventy-six exhibits at the court hearing, including delivery slips, a summary of costs, a summary of payments, copies of checks and copies of bank statements, all of which related to the construction project. The plaintiff testified that his expenditures totaled $139,089.18, but that he did not have all of the receipts to substantiate that figure. He also testified that a portion of some of the expenses could be allocated to the cottage on his property, such as the septic system and the well because they were designed to service both the garage and the cottage.

The following legal principles are relevant to the defendants' claim. "[I]n examining municipal estoppel claims, this court has often turned to the definition and discussion of the concept of substantial loss developed by courts in Illinois. . . . In reviewing the Illinois case law concerning substantial loss, it is evident that the primary consideration in determining whether a party will suffer a substantial loss is whether a party has made significant expenditures in reliance upon the rep-

resentation of a municipal official. See, e.g., *Drury Displays, Inc.* v. *Brown*, 306 Ill. App. 3d 1160, 1165–67, 715 N.E.2d 1230 (concluding that trial court did not abuse its discretion in granting writ of mandamus to compel city to reinstate permit where plaintiff expended $49,897.20 in reliance on issuance of permits), appeal denied, 186 Ill. 2d 567, 723 N.E.2d 1162 (1999); *Hagee* v. *Evanston*, 91 Ill. App. 3d 729, 734, 414 N.E.2d 1184 (1980) (finding municipal estoppel where, inter alia, 'large sums of money were expended in reliance upon the permit and apparent acquiescence by city officials'); *Peru* v. *Querciagrossa*, 73 Ill. App. 3d 1040, 1042, 392 N.E.2d 778 (1979) (concluding municipal estoppel established where plaintiff made 'substantial expenditures' in reliance on instructions provided by city zoning inspector); *Emerald Home Builders, Inc.* v. *Kolton*, 11 Ill. App. 3d 888, 893, 298 N.E.2d 275 (1973) (affirming trial court's determination that municipal estoppel established because plaintiff had spent $15,560.97 in reliance on issuance of building permit)." (Citation omitted.) *Levine* v. *Sterling*, 300 Conn. 521, 539–40, 16 A.3d 664 (2011).

Here, the court, taking into account some shared expenses for the garage and cottage and the fact that the plaintiff did not have receipts for all of his claimed expenditures, nevertheless found that he "expended more than $100,000 on the project prior to the issuance of the cease and desist orders." We cannot conclude that this finding, in light of the evidence presented before the board and the court, was clearly erroneous. Given these substantial expenditures, it was not improper for the court to make the determination that the plaintiff would suffer a significant loss if the cease and desist order was enforced.[12]

---

[12] Although the defendants claim that many of the improvements would not be rendered useless if the plaintiff proceeded to build the one-story garage authorized by the zoning permit, we note that the defendants have not always taken consistent positions with respect to the size of the structure that the plaintiff legally could construct. The town attorney submitted an

The board's final claim is that the court improperly concluded that the plaintiff could complete construction of the structure. The board argues that the court should have remanded the matter to the board "for a more definitive statement . . . as to how much of the presently constructed garage addition could remain."

As correctly noted by the board in its appellate brief, "[t]he relief granted must be compatible with the equities of the case." *Dupuis* v. *Submarine Base Credit Union, Inc.*, supra, 170 Conn. 356. In the present case, the court found that the plaintiff met frequently with the town's authorized agent, Bouteiller, and, relying on Bouteiller's acts and statements, the plaintiff in good faith expended more than $100,000 after the zoning permit was issued for the construction of the proposed structure. As evidenced by the photographs in the record, the structure is partially completed. It is not clear what position the board would take if the court remanded this matter to the board. On the basis of its counsel's statements, it is possible that it would conclude that any construction would violate the town's setback regulations. See footnote 12 of this opinion. The court explicitly found that it "would be highly inequitable and oppressive" to allow the town to enforce its zoning regulations, as it has chosen to interpret them, under the circumstances of this case. The board has not demonstrated that the court's determination of the appropriate remedy to apply in this matter was improper.

The judgment is affirmed.

In this opinion the other judges concurred.

opinion letter for the zoning board hearing in which he opined that "the zoning enforcement officer approved a zoning permit for a one story structure 1450 sq. ft. in size, similar in style and appearance to the existing garage." At the court hearing held on August 24, 2010, counsel for the board and Geremia stated that because of certain issues regarding the setback from the road, it was not certain that even a one-story accessory garage could be built on the property.