SCOTT LEVINE *v.* TOWN OF STERLING ET AL.
(SC 18470)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and Vertefeuille, Js.

Argued January 3—officially released April 12, 2011

*Sean P. Sullivan,* for the appellant (plaintiff).

*Michael A. Zizka,* with whom, on the brief, was *Lana M. Glovach,* for the appellees (defendants).

*Opinion*

EVELEIGH, J. This appeal arises from an action brought by the plaintiff, Scott Levine, against the defendants, the town of Sterling (town) and its building official, D. Kyle Collins, Jr.,[1] relating to the defendants' refusal to issue to the plaintiff permits to build two additional dwelling units on his property located in the town. The plaintiff appeals[2] from the judgment rendered by the trial court in favor of the defendants. On appeal, the plaintiff claims that the trial court improperly found

---

[1] For convenience, we refer to the town and Collins collectively as the defendants, and individually by name where appropriate.

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

that: (1) the town had validly enacted its land use ordinance under General Statutes § 8-17a;[3] and (2) the plaintiff did not prove the substantial loss element necessary to prevail on his municipal estoppel claim. Although we conclude that the trial court properly determined that the town had validly enacted its land use ordinance, we agree with the plaintiff that the trial court improperly applied the substantial loss test to his municipal estoppel claim. Accordingly, we affirm in part and reverse in part the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The plaintiff owns a parcel of land on Pine Hill Road in the town, consisting of approximately ten acres, and resides in one house on the parcel. In 2005, the plaintiff began to develop a plan to construct two additional houses on the parcel and, thereafter, to convert the three houses into a planned unit development. On October 19, 2005, the plaintiff presented his proposed plan to the town's board of selectmen (board), and the board "noted that [the plaintiff] is within his rights to do this but stressed that none of the homes on this lot could ever be sold individually." The plaintiff thereafter obtained approval from the town's inland wetland and watercourses commission and preliminary approval from the northeast health district.

Thereafter, the town amended its land use ordinance to prohibit the construction of more than one dwelling on a lot, and defined "dwelling" as "a freestanding build-

---

[3] General Statutes § 8-17a provides: "Any town, city or borough which, on June 8, 1982, has not adopted the provisions of chapter 124 and which is not exercising zoning power pursuant to any special act may, by ordinance, prescribe minimum land use regulations reasonably related to public health, safety and welfare, provided that such ordinance shall not be effective for a period of more than five years from the date of its adoption and provided further that such regulations shall be superseded by any regulations adopted on or after June 8, 1982, by any town, city or borough pursuant to chapter 124."

ing, structure, mobile home or manufactured home containing one or more dwelling units." The ordinance did not expressly provide whether the revisions would apply to projects already in development. As a result, the plaintiff sought clarification from the board as to whether the ordinance would affect his planned unit development. At its meeting on February 8, 2006, the board adopted a motion "to allow . . . the [plaintiff's] project on Pine Hill Road to move forward and not be affected by the new land use regulations." Thereafter, the plaintiff engaged and paid a number of professionals to assist in the development of the parcel and invested approximately 400 hours of his own personal time in furtherance of the development.

At a subsequent meeting of the board on September 13, 2006, the board rescinded its prior approval and adoption of the February 8, 2006 motion, and reserved the right to seek enforcement of the land use ordinance as it related to the plaintiff's project. The resolution provided in relevant part: "That the motion adopted by [the board] on February 8, 2006 is rescinded and shall be deemed to be void, since the [b]oard did not have the authority to waive the provisions of the current [l]and [u]se [o]rdinance . . . [t]hat the [plaintiff's] project, for which there was no approval by [the board] prior to the effective date of the current [l]and [u]se [o]rdinance, and for which no building permits have been sought or issued, is subject to the provisions of the current [l]and [u]se [o]rdinance; and . . . [t]hat the [plaintiff's] project, as previously submitted to the [b]oard, does not appear to comply with the current [l]and [u]se [o]rdinance, and the [b]oard reserves the right to seek enforcement of the ordinance with respect to that project." On November 13, 2006, the plaintiff applied for building permits to construct the additional dwellings on the parcel. Collins refused to issue the building permits.

Subsequently, the plaintiff brought this action against the defendants. In count one of his complaint, the plaintiff sought declaratory and injunctive relief challenging the town's authority to adopt and enforce the ordinance. Specifically, the plaintiff alleged that the fact that the town had adopted and later repealed zoning regulations pursuant to chapter 124 of the General Statutes (chapter 124 zoning regulations)[4] terminated its authority to enact an ordinance under § 8-17a. In count two, the plaintiff alleged municipal estoppel and sought equitable relief. In count three, the plaintiff claimed promissory estoppel and sought monetary damages.

The plaintiff subsequently filed a motion for summary judgment with regard to count one, which was denied by the trial court. Thereafter, the plaintiff sought permission to renew the motion for summary judgment, to which the defendants objected. The trial court denied the plaintiff's request for permission to renew his motion for summary judgment.[5] After a trial to the court,

---

[4] "Municipalities in Connecticut may exercise zoning power either by adopting the provisions of chapter 124 of the General Statutes, §§ 8-1 through 8-13a, or by enacting a municipal charter authorized by a special act of the legislature. . . . In either case, the power of the local zoning authority to adopt regulations is limited by the terms of the statute or special act." (Internal quotation marks omitted.) *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 409 n.12, 920 A.2d 1000 (2007).

[5] During the course of the trial, the defendants sought leave to raise a special defense that the trial court lacked subject matter jurisdiction because the plaintiff had failed to exhaust his administrative remedies. Specifically, the defendants claimed that the plaintiff had failed to appeal from the decision of Joseph R. Theroux, the town's land use enforcement officer, which had concluded that the plaintiff's proposed development did not conform to the ordinance. The plaintiff objected to the defendant's motion. The trial court allowed the defendants to raise the special defense, but concluded that the plaintiff could not have appealed to the land use board of appeals because he was challenging the validity of the ordinance that created that body, raising equitable claims of promissory and municipal estoppel and seeking monetary damages, which are claims that must be decided by a court of law, not a zoning board of appeals. See part I of this opinion.

the trial court rendered judgment for the defendants on each count of the plaintiff's complaint. In its memorandum of decision, the trial court concluded that: (1) the town had validly enacted its land use ordinance pursuant to § 8-17a because the town had not adopted and fully implemented the provisions of chapter 124 of the General Statutes; and (2) the plaintiff had failed to prove his claims of promissory and municipal estoppel because he did not meet his burden of establishing a substantial loss as a result of the defendants' actions. This appeal followed.

I

As a threshold matter, we consider the defendants' claim that the trial court lacked subject matter jurisdiction over the plaintiff's claims. The defendants contend that the trial court lacked subject matter jurisdiction over the plaintiff's claims because he had not exhausted his administrative remedies. Specifically, the defendants claim that the plaintiff was required to appeal to the town's zoning board of appeals from the decision of Joseph R. Theroux, the town's land use enforcement officer, which had concluded that the plaintiff's proposed development on the parcel did not comply with the ordinance. In response, the plaintiff asserts that the trial court did not lack subject matter jurisdiction over his claims because he did not fail to exhaust his administrative remedies, namely, because there were no administrative remedies available to him.[6] We agree with the plaintiff.

---

[6] The plaintiff also asserts that his claim is not barred by the exhaustion of administrative remedies doctrine because the decision of Theroux was not an appealable decision, the administrative remedies doctrine does not apply to remedies established by municipal ordinance, and any administrative remedy would have been inadequate in the present case. Because we conclude that there were no administrative remedies available to the plaintiff, we need not address the plaintiff's other claims regarding the exhaustion of administrative remedies.

"Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiff's] claim. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Neiman* v. *Yale University*, 270 Conn. 244, 251, 851 A.2d 1165 (2004).

"Under our exhaustion of administrative remedies doctrine, a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum. . . . In the absence of exhaustion of that remedy, the action must be dismissed. . . . We have recognized that a party aggrieved by a decision of an administrative agency may be excused from exhaustion of administrative remedies if: recourse to the administrative remedy would be futile or inadequate . . . or injunctive relief from an agency decision is necessary to prevent immediate and irreparable harm." (Citation omitted; internal quotation marks omitted.) *D'Eramo* v. *Smith*, 273 Conn. 610, 616, 872 A.2d 408 (2005).

In the present case, Theroux wrote a letter to the plaintiff on November 16, 2006, notifying the plaintiff that he was "in agreement with the [board] that [the plaintiff's] proposed development does in fact constitute a subdivision and that it does not conform to the [ordinance] that was [originally] adopted on July 23, 2004." It is undisputed that the town established a zoning board of appeals by amendment to its ordinance on January 28, 2006. This amendment was not effective, however, until November 18, 2006. Indeed, at oral argument before this court, the defendants conceded that at the time the plaintiff would have appealed from the decision of Theroux, the town did not have a zoning

board of appeals in place. Accordingly, we conclude that the plaintiff was not required to appeal to a non-existent zoning board of appeals from the decision of the town's land use official.

The defendants also assert that the plaintiff should have appealed to the zoning board of appeals from Collins' decision denying the plaintiff building permits for the construction of two additional dwellings on the parcel. The ordinance establishing the zoning board of appeals, however, provides that "[a]ppeals from decisions of the board of selectmen or the land use enforcement officer pursuant to these regulations may be taken to the land use board of appeals . . . ." Accordingly, we conclude that the plaintiff could not have appealed from Collins' decision to the zoning board of appeals.

The defendants further claim that the plaintiff could have appealed from Collins' decision pursuant to the statutorily prescribed appeal procedure governing the decisions of municipal building officials as provided in General Statutes § 29-266. We disagree. Section 29-266 (b) provides in relevant part: "When the building official rejects or refuses to approve the mode or manner of construction proposed to be followed or the materials to be used in the erection or alteration of a building or structure, or when it is claimed that the provisions of the code do not apply or that an equally good or more desirable form of construction can be employed in a specific case, or when it is claimed that the true intent and meaning of the code and regulations have been misconstrued or wrongly interpreted, or when the building official issues a written order under subsection (c) of section 29-261, the owner of such building or structure, whether already erected or to be erected, or his authorized agent may appeal in writing from the decision of the building official to the board of appeals. . . ." In the present case, Collins' decision only indi-

cated that the plaintiff's "proposed construction is not in compliance with subdivision and land use ordinances in the town." This decision, therefore did not involve any finding that the plaintiff's proposed development of the parcel did not comply with the building code. Accordingly, we conclude that the plaintiff could not have appealed to the board of appeals under § 29-266.

On the basis of the foregoing, we conclude that the plaintiff lacked any administrative remedies with which to appeal from either the decisions of Collins or Theroux. Accordingly, we conclude that the trial court properly determined that it had subject matter jurisdiction over the plaintiff's claims.

II

The plaintiff first claims that the trial court improperly concluded that the town validly enacted its ordinance under § 8-17a because the town's adoption of chapter 124 zoning regulations in 1990 ended its authority to adopt land use ordinances under § 8-17a. Specifically, the plaintiff claims that the plain language of § 8-17a permanently bars a town from adopting land use ordinances after it enacts chapter 124 zoning regulations, even if the regulations never became effective or it thereafter repeals such regulations. The plaintiff further asserts that the legislative history of § 8-17a confirms his interpretation of that statute. In response, the defendants assert that the trial court properly concluded that the town had validly enacted its land use ordinance. Specifically, the defendants claim that the use of the term "supersede" in § 8-17a clearly and unambiguously provides that chapter 124 zoning regulations only replace land use ordinances that are in effect at

the time the chapter 124 zoning regulations become effective.[7] We agree with the defendants.[8]

The following additional facts and background are necessary to the resolution of this claim. Prior to 1982, the town had not adopted zoning regulations pursuant to chapter 124 of the General Statutes. On March 28, 1990, the town adopted chapter 124 and, on October 25, 1990, the town's planning and zoning commission adopted chapter 124 zoning regulations. Shortly thereafter, on November 9, 1990, however, the town voted to repeal the chapter 124 zoning regulations, effective December 1, 1990. Thereafter, the town did not have any zoning regulations or land use ordinances, until July, 2004, when it enacted the ordinance under § 8-17a.

We first set forth the standard of review applicable to the plaintiff's claim. The issue of whether a town can adopt an ordinance under § 8-17a after it briefly adopted, and then repealed, chapter 124 zoning regulations is a question of law over which our review is plenary. *State* v. *Peters*, 287 Conn. 82, 87, 946 A.2d 1231 (2008). In examining the meaning of a particular statute, we are guided by fundamental principles of statutory construction. See General Statutes § 1-2z;[9] see also

[7] The defendants further assert that the ordinance could not have been superseded by the town's chapter 124 zoning regulations because those regulations were never effective. Because we conclude that the plain language of § 8-17a provides that chapter 124 zoning regulations only replace land use ordinances that are in effect at the time the chapter 124 zoning regulations are effective, and because there is no dispute that the town's chapter 124 zoning regulations were not in effect at the time the town adopted the ordinance at issue in the present case, we need not determine whether the town's chapter 124 zoning regulations were ever effective.

[8] The defendants raise two alternative grounds for affirming the judgment of the trial court as to whether the town had validly enacted the ordinance. Because we affirm the judgment of the trial court on the ground decided by the trial court, we need not address the defendants' alternative grounds.

[9] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and

*Testa* v. *Geressy,* 286 Conn. 291, 308, 943 A.2d 1075 (2008) ("[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature" [internal quotation marks omitted]).

Pursuant to § 1-2z, we begin with the text of the statute. Section 8-17a provides: "Any town, city or borough which, on June 8, 1982, has not adopted the provisions of chapter 124 and which is not exercising zoning power pursuant to any special act may, by ordinance, prescribe minimum land use regulations reasonably related to public health, safety and welfare, provided that such ordinance shall not be effective for a period of more than five years from the date of its adoption and provided further that such regulations shall be superseded by any regulations adopted on or after June 8, 1982, by any town, city or borough pursuant to chapter 124."

The resolution of the plaintiff's claim requires us to interpret the meaning of the term "supersedes" as used in § 8-17a. "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." General Statutes § 1-1 (a). "If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Heim* v. *Zoning Board of Appeals,* 288 Conn. 628, 636, 953 A.2d 877 (2008).

The term supersedes is not defined in § 8-17a. We therefore turn to the dictionary definition of the term supersedes to ascertain its common usage. The term

does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

supersede is defined with substantial similarity in a number of dictionaries, each indicating that its use presumes that it takes the place of something else in existence at that time. For example, Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) defines supersede as "to cause to be set aside . . . to force out of use as inferior . . . to take the place, room, or position of . . . [and] to displace in favor of another . . . ." The American Heritage Dictionary of the English Language (3d Ed. 1992) defines supersede as "[t]o take the place of; replace . . . [t]o cause to be set aside, especially to displace as inferior or antiquated." See also Black's Law Dictionary (9th Ed. 2009) (defining supersede as, inter alia, "[t]o annul, make void, or repeal by taking the place of").[10]

In the present case, the plaintiff asserts that the chapter 124 zoning regulations that were adopted by the town in 1990 and repealed shortly thereafter supersede the ordinance that the town adopted in 2004. We disagree. It is undisputed that, at the time the town adopted the ordinance at issue in this case, it did not have chapter 124 zoning regulations in place. Construing the term supersedes in § 8-17a according to the commonly approved usage of that term, we cannot conclude that an ordinance is superseded by a regulation that is no longer in place. Indeed, the interpretation of § 8-17a urged by the plaintiff would yield an absurd result, namely, that an ordinance adopted by a town was superseded by a regulation that had been repealed by that town approximately fourteen years before. Such an interpretation would also be unworkable because, in the process of drafting and enacting ordinances, a town

---

[10] The Appellate Court has also recognized that "[t]he plain meaning of supersede is '[t]o make obsolete, inferior, or outmoded . . . to make void . . . annul, override . . . to make superfluous or unnecessary . . . to take the place of . . . to take precedence over . . . .' Webster, Third New International Dictionary." *Fowler* v. *Weiss*, 15 Conn. App. 690, 693, 546 A.2d 321, cert. denied, 209 Conn. 814, 550 A.2d 1082 (1988).

would be required to consider whether ordinances it seeks to pass now would be superseded by those that it previously had repealed. Accordingly, we conclude that the trial court properly determined that the town had validly enacted the ordinance under § 8-17a.

### III

The plaintiff's final claim is that the trial court improperly concluded that he had not provided sufficient evidence to support his claims of estoppel against the town.[11] Specifically, the plaintiff asserts that the trial court improperly applied an incorrect standard for determining whether he had suffered a substantial loss.[12] In response, the defendants claim that the trial court properly concluded that the plaintiff failed to establish that he had suffered a substantial loss. We agree with the plaintiff.[13]

We begin our analysis with the applicable standard of review. "The standards governing the application of equitable estoppel are well established. There are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce

---

[11] The plaintiff brought separate claims of promissory estoppel and municipal estoppel. We agree with the trial court that a claim of municipal estoppel is an action for promissory estoppel against a municipality, and treat these claims as one.

[12] The plaintiff also claims that the trial court's factual finding that he did not prove a substantial loss was clearly erroneous. Because we conclude that the trial court applied an incorrect legal standard for determining whether the plaintiff suffered a substantial loss, we do not address whether its factual determination made utilizing that standard was clearly erroneous.

[13] The plaintiff also claims that he had a vested right in the development of the parcel and was not, therefore, required to show a substantial loss. The plaintiff failed to raise this claim at trial. Accordingly, we do not address this claim on appeal. See, e.g., *Remillard* v. *Remillard*, 297 Conn. 345, 351, 999 A.2d 713 (2010) ("It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court." [Internal quotation marks omitted.]).

another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done. . . . [I]n order for a court to invoke municipal estoppel, the aggrieved party must establish that: (1) an authorized agent of the municipality had done or said something calculated or intended to induce the party to believe that certain facts existed and to act on that belief; (2) the party had exercised due diligence to ascertain the truth and not only lacked knowledge of the true state of things, but also had no convenient means of acquiring that knowledge; (3) the party had changed its position in reliance on those facts; and (4) the party would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents. . . .

"The party claiming estoppel . . . has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . The legal conclusions of the trial court will stand, however, only if they are legally and logically correct and are consistent with the facts of the case. . . . Accordingly, we will reverse the trial court's legal conclusions regarding estoppel only if they involve an erroneous application of the law." (Citations omitted; internal quotation marks omitted.) *O'Connor* v. *Waterbury*, 286 Conn. 732, 757–58, 945 A.2d 936 (2008).

In the present case, the trial court determined that the plaintiff had sufficiently established the first three elements of the doctrine of municipal estoppel, but had failed to meet his burden as to the fourth element,

namely, by failing to establish that he had suffered a substantial loss as a result of the defendants' actions. The trial court determined that, although the plaintiff had demonstrated that he had invested time and money in preparing his property for the construction of two additional dwellings, "he has not established the extent to which his investment would be lost if the [town] was not estopped from enforcing its land use ordinance prohibiting the construction of more than one dwelling on a lot. Specifically, he has not demonstrated that the improvements made would be rendered useless or would have to be destroyed as a result of the enforcement of the land use ordinance. Construction of the proposed additional dwellings had not even begun."

In support of its determination that the plaintiff had not met his burden of establishing that he suffered a substantial loss as a result of the defendants' actions, the trial court cited *Dornfried* v. *October Twenty-Four, Inc.*, 230 Conn. 622, 646 A.2d 772 (1994), wherein the named defendant, the owner of property zoned for residential use, obtained a permit to conduct site regrading and subsequently allowed another entity, the defendant A. Aiudi and Sons, to quarry rock and gravel for profit under the guise of site regrading. Id., 623 n.1. The plaintiff municipality sought to enjoin the defendants' quarrying operation and the defendants raised municipal estoppel as a special defense. Id., 627–28. On appeal, this court concluded that the defendants had not established that they suffered a substantial loss for purposes of municipal estoppel, stating: "In this case, the defendants have offered no evidence of any out of pocket investment, such as a capital investment in equipment, a building, or real property, that would be lost if the town zoning regulation were enforced. Rather, the defendants have shown only that enforcement of the town zoning regulation would terminate A. Aiudi and Son's windfall of obtaining free rock for use in its con-

crete business from the operation of an illegal quarry in a residential zone. Such a loss does not constitute a substantial loss for the purposes of municipal estoppel." Id., 640. Contrary to the trial court's interpretation of *Dornfried* in the present case, however, our conclusion in *Dornfried* does not establish a requirement that a plaintiff must demonstrate a capital investment in order to establish that he or she suffered a substantial loss for purposes of municipal estoppel.

The trial court also cited *Cortese* v. *Planning & Zoning Board of Appeals*, 274 Conn. 411, 876 A.2d 540 (2005). In *Cortese*, the plaintiff purchased property in a residential zone that previously had been granted a prior special exemption for commercial use as an automobile repair facility. Id., 414. Prior to purchasing the property, the plaintiff drafted a letter for the zoning enforcement officer of the town of Greenwich to sign, which indicated the plaintiff's plan to use the property to service and repair oil delivery trucks and to garage those trucks overnight. Id., 414–15. Thereafter, relying on the letter signed by the town's zoning enforcement officer, the plaintiff purchased the property. Id., 415. For approximately four years, the plaintiff continued to use the property to both repair and garage oil delivery trucks. In 2000, the town's zoning enforcement officer notified the plaintiff that "the use of the building and property . . . for anything other than an automotive repair facility is a violation of the [municipal zone regulations]. Specifically, the use of the property as a depot for oil delivery trucks, employee parking, oil service vehicles and/or employees . . . are all violations of your approved use." (Internal quotation marks omitted.) Id., 415–16. The zoning enforcement officer subsequently issued a cease and desist order, from which the plaintiff appealed, claiming, inter alia, municipal estoppel. Id., 416.

The trial court rendered judgment for the plaintiff, concluding that the town was equitably estopped from enforcing the cease and desist order. As grounds for that determination, the trial court concluded "that [the town's zoning enforcement officer], an authorized agent of the town, had undertaken an action, namely, signing the letter drafted by [the plaintiff], intended to induce the plaintiff to believe that certain facts existed and to act on that belief, the plaintiff had relied on those facts to her injury, and it would be inequitable and oppressive to prevent the plaintiff from continuing to use the property, which she had purchased for $655,000, in the manner in which she had been using it uninterrupted for several years." Id., 417.

On appeal, this court reversed the judgment of the trial court. In doing so, we reasoned: "Although the purchase price of the property represents a significant out-of-pocket investment on the part of the plaintiff, the record is completely silent on the extent to which that investment would be lost if the municipality was not estopped from enforcing the cease and desist order. Certainly, the record does not support the trial court's finding that the plaintiff's entire investment would be lost. Although the plaintiff testified before the trial court that she would not have purchased the property if [the zoning enforcement officer] had not signed the letter . . . [other evidence established] that [the plaintiff] has one mechanic and one assistant on a part-time basis that works in the building [on the property]. She repairs only the company vehicles . . . and [t]he only thing that's done [on the property] is . . . the repair of the company vehicles and the storage of the trucks in the building at night. Thus, the property continues to possess economic value to the plaintiff as a service and repair facility for the company vehicles, which is a legal nonconforming use of the property, even if the cease and desist order prevents her from garaging functional

vehicles on the property overnight. Furthermore, the plaintiff offered no evidence that she made capital investments in the property to make it suitable for garaging the oil delivery vehicles that would be rendered useless or have to be destroyed as a result of the cease and desist order. Finally, the record is devoid of any evidence of a diminution in the property's value arising from an inability to garage oil delivery trucks on the premises. Without some evidence of a substantial loss as a result of the defendant's action, not just a substantial investment on the part of the plaintiff, it was improper for the trial court to invoke the doctrine of municipal estoppel." (Internal quotation marks omitted.) Id., 420–21.

In the present case, the trial court determined that, although the plaintiff had demonstrated that he had invested time and money into preparing his property for the construction of two additional dwellings, and had paid for the assistance of professionals, he had not "demonstrated that the improvements made would be rendered useless or have to be destroyed as a result of the enforcement of the land use ordinance. Construction of the proposed additional dwellings had not even begun." We conclude that by focusing on whether improvements made were rendered useless and whether construction of the additional dwellings had begun, the trial court improperly applied the substantial loss test and required that the plaintiff demonstrate a capital investment in the property. Nothing in our case law interpreting the substantial loss element of municipal estoppel claims requires such a strict showing. Indeed, in examining municipal estoppel claims, this court has often turned to the definition and discussion of the concept of substantial loss developed by courts in Illinois. See, e.g., *Cortese* v. *Planning & Zoning Board of Appeals*, supra, 274 Conn. 419–20. In reviewing the Illinois case law concerning substantial loss, it is

evident that the primary consideration in determining whether a party will suffer a substantial loss is whether a party has made significant expenditures in reliance upon the representation of a municipal official. See, e.g., *Drury Displays, Inc.* v. *Brown*, 306 Ill. App. 3d 1160, 1165–67, 715 N.E.2d 1230 (concluding that trial court did not abuse its discretion in granting writ of mandamus to compel city to reinstate permit where plaintiff expended $49,897.20 in reliance on issuance of permits), appeal denied, 186 Ill. 2d 567, 723 N.E.2d 1162 (1999); *Hagee* v. *Evanston*, 91 Ill. App. 3d 729, 734, 414 N.E.2d 1184 (1980) (finding municipal estoppel where, inter alia, "large sums of money were expended in reliance upon the permit and apparent acquiescence by city officials"); *Peru* v. *Querciagrossa*, 73 Ill. App. 3d 1040, 1042, 392 N.E.2d 778 (1979) (concluding municipal estoppel established where plaintiff made "substantial expenditures" in reliance on instructions provided by city zoning inspector); *Emerald Home Builders, Inc.* v. *Kolton*, 11 Ill. App. 3d 888, 893, 298 N.E.2d 275 (1973) (affirming trial court's determination that municipal estoppel established because plaintiff had spent $15,560.97 in reliance on issuance of building permit). Accordingly, the trial court improperly concluded that the plaintiff had not set forth sufficient evidence on his municipal estoppel claim.

As an alternative ground for affirming the trial court's judgment, the defendants also claim that the trial court improperly determined that the plaintiff had established another element of the substantial loss test, namely, that the plaintiff reasonably relied on the board's February 8, 2006 interpretation that the ordinance would not be applicable to the plaintiff's proposed development. Specifically, the defendants assert that the plaintiff's reliance on the board's interpretation was not reasonable

because their interpretation was clearly erroneous. We disagree.

As we have explained previously herein, "[t]he party claiming estoppel . . . has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *O'Connor* v. *Waterbury*, supra, 286 Conn. 758.

In the present case, the evidence established that the ordinance did not indicate whether it would apply to projects already in development at the time it became effective. As the trial court determined, as soon as the plaintiff became aware of the ordinance, he sought the advice of the board, and as a layperson, he had no reason to think that their determination was incorrect. Indeed, as the trial court recognized, the board was the body authorized to interpret and apply the ordinance, and the board did not determine that it did not have the authority to exempt applications in process until its attorney later made that determination. In light of the fact that the ordinance was silent on the issue of its retroactivity, as well as the fact that it previously had not been interpreted by the town, its land use official or attorney, we cannot conclude that it was clearly erroneous for the trial court to determine that the plaintiff reasonably relied on the board's interpretation.

The judgment is reversed with respect to the municipal estoppel claim and the case is remanded for a new trial on that claim; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.