******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TURN OF RIVER FIRE DEPARTMENT, INC., ET AL.
*v.* CITY OF STAMFORD ET AL.
(AC 36468)

CITY OF STAMFORD ET AL. *v.* TURN OF RIVER FIRE
DEPARTMENT, INC., ET AL.
(AC 36465)

Lavine, Prescott and Pellegrino, Js.

*Argued March 9—officially released September 15, 2015*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Hon. David R. Tobin, judge trial
referee.)

*Mark J. Kovack*, for the appellants (plaintiffs in the
first case, defendants in the second case Long Ridge
Fire Department, Inc., et al.).

*Michael S. Toma*, assistant corporation counsel, with
whom, on the brief, was *Dana B. Lee*, assistant corporation
counsel, for the appellees (defendants in the first
case, plaintiffs in the second case).

*Opinion*

PRESCOTT, J. Prior to 2012, six fire departments served the city of Stamford: the Fire and Rescue Department, which the city maintained and operated, and five independently governed and autonomous volunteer fire departments. Each department provided exclusive firefighting services within its assigned fire service district. In 2012, Stamford's voters amended the city's charter to organize the six departments into one department, the Stamford Fire Department, and place it under the direction of the newly created position of fire chief. The plaintiffs Long Ridge Fire Company, Inc. (Long Ridge), one of the volunteer departments, and its chief, Stuart Teitelbaum, subsequently brought an action for declaratory and injunctive relief against the defendants, the city of Stamford (city), Antonio Conte, the fire chief, Barry Callahan, the city's fire marshal, and Thaddeus Jankowski, the city's director of public safety, health, and welfare,[1] claiming that forming the new organizational structure of the six departments without the plaintiffs' consent violated their corporate, statutory, and constitutional rights. Following a trial, the trial court rejected all of these claims, and the plaintiffs appealed from the judgments.

On appeal, the plaintiffs claim that the court improperly determined that the charter amendments did not (1) unlawfully compel Long Ridge to forfeit its rights as a private corporation; (2) violate General Statutes § 7-301; and (3) violate the takings clause of the fifth amendment to the United States constitution.[2] We disagree with each of these claims and, accordingly, affirm the judgments of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. Long Ridge is a volunteer fire company that serves the city. It was incorporated in 1928 as a Connecticut nonstock corporation, and maintains a roster of thirty-seven members. In addition to owning and operating two fire stations, Long Ridge also owns firefighting vehicles and other firefighting equipment used in its operations. The company's operational expenses are funded by the city and supplemented by its own fundraising efforts. Teitelbaum is the company's current chief.

Prior to 2012, Long Ridge was one of five independent and autonomous volunteer fire departments that provided firefighting services to the city. The city maintained and operated the Fire and Rescue Department. Each department was assigned its own fire service district, in which it exercised exclusive jurisdiction to provide firefighting services.

In 2012, the voters of the city approved several amendments to its charter that impacted firefighting operations within the city in two significant respects. First and foremost, the amendments abolished the Fire

and Rescue Department and established a single fire department for the entire city. To oversee the department, the amendments created the new position of fire chief. They also created two positions, assistant chief for career service firefighters and assistant chief for volunteer service firefighters, who are to be appointed by the fire chief.

Second, the amendments provided that the volunteer fire departments—now referred to in the charter as companies[3]—would become part of the Stamford Fire Department. In this respect, each would maintain its independent status as a nonstock corporation and control over its organization, status, and property, but be "subject to the provisions of [the] [c]harter." Moreover, each of the companies' chiefs would retain "primary firefighting responsibilities in their Fire Service Districts and primary responsibilities over the personnel and equipment assigned to their Fire Service Districts, subject to the supervision and direction of the Assistant Chief [for] Volunteer Services and the Fire Chief."

The plaintiffs subsequently commenced an action against the city and Jankowski challenging the charter amendments. In their complaint, they sought injunctive relief and a declaratory judgment that the amendments violated, inter alia, their corporate, statutory, and federal and state constitutional rights. Shortly thereafter, the defendants brought a separate action against the plaintiffs seeking, among other things, a declaratory judgment that the charter amendments are lawful, valid, and constitutional.

Following a consolidated trial, the court, *Hon. David R. Tobin*, judge trial referee, issued a thorough and well reasoned memorandum of decision disposing of the claims raised in both actions. See footnote 1 of this opinion. Specifically, it concluded, inter alia, that the charter amendments did not violate the plaintiffs' corporate, statutory, or federal or state constitutional rights. The plaintiffs subsequently appealed from the court's judgments denying their request for injunctive relief and a declaratory judgment, and upholding the validity of the charter amendments.[4] Additional facts will be set forth as necessary.

I

The plaintiffs first claim that the court improperly concluded that the charter amendments do not require Long Ridge to forfeit its rights as a private corporation. Specifically, they contend that without lawful authority, the amendments usurp Long Ridge's organization, status, and property by forcibly merging it with the Stamford Fire Department. They further claim that the charter amendments provide Long Ridge with no option to opt out of the city's "mandatory confiscation of its property, volunteer members, paid personnel, and . . . privately raised [income] . . . ." Finally, the plaintiffs

claim that the city does not have the authority to make Long Ridge, a private corporation, a municipal agency without its consent. We are not persuaded by these claims because, among other things, the plaintiffs misapprehend the meaning, nature, and effect of the charter amendments.

As an initial matter, we note that the plaintiffs have identified no provision of our General Statutes or any case law that grants a private corporation such as Long Ridge a right to engage in municipal firefighting activities. Instead, they claim that Long Ridge's "state sanctioned incorporation and authorization to operate as a fire department, its almost 90 year history of operations within and on behalf of the Long Ridge section of Stamford, its continued recognition in the charter . . . and its ongoing history of being funded by the city in consideration for its ongoing provision of professional services has established [its] legal right to operate as a stand-alone fire department." We are unaware of any authority, however, suggesting that these factors, either individually or cumulatively, establish a private right to engage in fire protection services on behalf of a municipality. Tellingly, the plaintiffs provide us with none.

Indeed, it is generally well recognized that maintaining and operating a fire department is a traditionally public function that falls within a state's police power. See 16A Am. Jur. 2d 240, Physical Welfare and Public Safety, Generally § 347 (2009) ("[f]ire control is a proper function of the state's police power"). In Connecticut, the legislature has delegated that function to local municipalities through General Statutes § 7-148 (c) (4) (B). The scope of that delegation is especially broad. Section 7–148 (c) (4) (B) provides in relevant part that "[a]ny municipality shall have the power to . . . [p]rovide for fire protection, organize, maintain and regulate the persons providing fire protection, provide the necessary apparatus for extinguishing fires and do all other things necessary or desirable for the protection of the municipality from fire . . . ."

We begin, therefore, our review of the plaintiffs' claim by setting forth the applicable standard of review and legal principles that will guide our analysis. The plaintiffs' claims require us to interpret the 2012 amendments to the city's charter. "As with any issue of statutory construction, the interpretation of a charter or municipal ordinance presents a question of law, over which our review is plenary. . . . In construing a city charter, the rules of statutory construction generally apply. . . . In arriving at the intention of the framers of the charter the whole and every part of the instrument must be taken and compared together. In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws." (Internal quotation marks omitted.) *Kiewlen* v.

*Meriden*, 317 Conn. 139, 149, 115 A.3d 1095 (2015).

With these principles in mind, we turn to the language of the charter provisions challenged in this appeal. The plaintiffs take issue with § C5-40-3 (a) and (f) of the Stamford Charter (charter), as amended, which establish the Stamford Fire Department and define the role of the volunteer companies within it. Specifically, § C5-40-3 (a) of the charter provides in relevant part that "[t]here shall be a Fire Department for the City of Stamford . . . ." Section C5-40-3 (f) provides that "[t]he volunteer fire companies of Stamford shall be part of the Stamford Fire Department and will be important components of the Stamford Fire Department. The perpetuation and strengthening of those volunteer companies through recruitment of volunteer firefighters shall be a priority of the Fire Chief and the Assistant Chief for Volunteer Services. Nothing in this Charter shall be construed to affect the organization, status or property of the volunteer fire companies of Stamford except that they are now part of the combined Stamford Fire Department and subject to the provisions of this Charter."

The plaintiffs contend that by enacting this language, the city has effectively taken Long Ridge's organization, members, property, and income without its consent. They direct our attention to the charter's use of the phrase, "shall be a part of the Stamford Fire Department," which they claim evidences the city's intent to make the volunteer fire companies' participation in the Stamford Fire Department mandatory.

In considering the plaintiffs' argument, we are mindful of the principle that "[c]ommon sense is to be employed in the construction of a charter. . . . A city charter also must be construed, if possible, so as reasonably to promote its ultimate purpose. . . . The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of an act is a reason for rejecting that interpretation in favor of another which would provide a result that is . . . reasonable." (Citations omitted; internal quotation marks omitted.) *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 429, 572 A.2d 951 (1990).

The language and structure of § C5-40-3 of the charter indicate that its ultimate purpose is to establish a single, unified fire department to serve the entire city. The section comprises numerous subsections,[5] almost all of which individually delineate the roles and responsibilities, among other things, of the fire department's constituent components. These components include the fire chief, the assistant chiefs, the general membership, the fire marshal, the volunteer fire companies, and the volunteer fire chiefs.

None of the subsections expressly or implicitly indi-

cate, however, that serving in these roles is mandatory for any organization or individual. Indeed, neither Long Ridge nor Teitelbaum is individually named within any of the provisions composing § C5-40-3 of the charter, including § C5-40-3 (f). In the absence of that mandate, we conclude that the challenged amendments are most reasonably construed as applying only to those volunteer fire companies that voluntarily elect to provide fire protection to the city. Consequently, only if Long Ridge chooses to continue to serve the city in the capacity of a fire company will it be subject to the provisions of § C5-40-3, as amended.

The plaintiffs' alternative construction of the amendments—that by using the word "shall," the city has confiscated each company's organization, members, property, and income—must be rejected for at least four reasons. First and foremost, it is unreasonable and conflicts with common sense. We simply will not presume that the city intended such a radical and sweeping result without far more explicit language expressing that intent. Second, the plaintiffs' interpretation conflicts with the plain language of § C5-40-3 (f) of the charter, which expressly disclaims any intent "to affect the organization, status or property of the volunteer fire companies of Stamford" beyond placing them within the organizational structure of the Stamford Fire Department and subjecting them to the provisions of the charter.

Third, it is well recognized that this court has a duty to avoid interpreting statutes in a manner that places them in constitutional jeopardy. See *State* v. *Jenkins*, 288 Conn. 610, 625–26, 954 A.2d 806 (2008); *Clark* v. *Commissioner of Correction*, 281 Conn. 380, 405, 917 A.2d 1 (2007). The plaintiffs' interpretation of the amendments—that they effect a wholesale confiscation of the entire Long Ridge fire company without the right to decline participation—may raise serious concerns about their constitutionality under the due process and takings clauses of the federal and state constitutions. Accordingly, we must "search for an effective and constitutional construction that reasonably accords with the . . . underlying intent" of the amendments. *Clark* v. *Commissioner of Correction*, supra, 405.

Fourth and finally, as we have previously discussed, Long Ridge has no statutory or common-law right to continue providing firefighting services to the city. Thus, the charter amendments cannot have confiscated "income" to which Long Ridge does not have a right.

In sum, although the amendments permissibly regulate the manner in which Long Ridge may continue to provide fire protection services within and for the city, we discern no language in them reasonably construed as compelling Long Ridge to continue providing those services. We therefore conclude that the challenged amendments do not require Long Ridge to forfeit its

existence as a private corporation.

## II

The plaintiffs next claim that the court improperly concluded that the charter amendments do not violate § 7-301. Specifically, they argue § 7-301 vests Long Ridge with "the right not to be superseded by a municipal fire department against its will," and that the city violated this right when it created the Stamford Fire Department. In response, the defendants argue that § 7-301 is inapplicable because it applies only to municipal fire departments created by ordinance. Alternatively, they claim that even if § 7-301 is applicable, the plaintiffs' claim must fail because Long Ridge has not been superseded under the statute.[6] We agree with both of the defendants' arguments.

The applicability and meaning of § 7-301 present questions of law over which our review is plenary. See *Commissioner of Social Services* v. *Smith*, 265 Conn. 723, 734, 830 A.2d 228 (2003). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Terwilliger*, 314 Conn. 618, 653–54, 104 A.3d 638, 658 (2014).

Section 7-301 provides in relevant part: "Any town may provide *by ordinance* for the protection of property within its limits from fire and for the establishment of a town fire department . . . . The board of selectmen, town council or board of fire commissioners may make regulations for the conduct of the fire department and may appoint, discipline and remove for cause shown all employees of the department and purchase supplies and equipment necessary for its operation; provided, *if the ordinance so provides*, the board of selectmen, town council or board of fire commissioners shall enter into an agreement with any volunteer fire company or companies within the town for the protection thereof from fire on such conditions as to financial assistance and the

observance of the regulations of the board of selectmen, town council or board of fire commissioners *as such ordinance prescribes*; and provided no town fire department *established under the provisions of this section* shall supersede any volunteer fire company which is the owner of any building, fire apparatus or other property without having first come to an agreement with such company with regard to the disposition of and compensation for such building, apparatus or other property. . . ." (Emphasis added.)

As the defendants observe, § 7-301 prohibits, by its plain terms, towns that have established fire departments "by ordinance" from superseding preexisting volunteer fire departments without first reaching certain agreements with them. It contains no language, however, prohibiting towns that have established fire departments pursuant to a municipal charter from doing so. Although a charter and an ordinance are similar in some respects, they are not the same. "[A] town charter, whether adopted by special act of the General Assembly or . . . under the Home Rule Act; General Statutes § 7-188; constitutes the organic law of the municipality. . . . It is well established that a [town's] charter is the fountainhead of municipal powers. . . . The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised. . . .

"[A] charter bears the same general relation to the ordinances of the city that the constitution of the state bears to the statutes. . . . An ordinance is a legislative enactment of a municipality. . . . It designates a local law of a municipal corporation, duly enacted by the proper authorities, prescribing general, uniform, and permanent rules of conduct relating to the corporate affairs of the municipality." (Citations omitted; internal quotation marks omitted.) *Palermo* v. *Ulatowski*, 97 Conn. App. 521, 524–25, 904 A.2d 1278, cert. denied, 280 Conn. App. 936, 909 A.2d 961 (2006). As the source of a municipality's powers, charters are generally adopted and amended at a referendum by the municipality's electors. See General Statutes § 7-191. Ordinances, in contrast, may be adopted by the municipality's legislative body. See General Statutes § 7-157 (a) ("[o]rdinances may be enacted by the legislative body of any town, city, borough or fire district").[7]

Given the significant differences between municipal charters and ordinances, we must give effect to the legislature's decision to omit fire departments established by charter provisions from the scope of § 7-301. "We are not permitted to supply statutory language that the legislature may have chosen to omit." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *State Board of Labor Relations*, 296 Conn. 594, 605, 996 A.2d 729 (2010). Accordingly, we conclude that because the Stamford Fire Department was established by municipal charter, rather than by ordinance, the statute does

not apply to the city.

Even if we assume, arguendo, that § 7-301 is applicable in the present case, we conclude that it does not conflict with the charter amendments because the amendments do not cause the Stamford Fire Department to supersede Long Ridge. In reaching this conclusion, we observe that the term "supersede" is not defined in the statute. We thus look to the dictionary definition of the term to ascertain its common usage. See *Sams* v. *Dept. of Environmental Protection*, 308 Conn. 359, 404, 63 A.3d 953 (2013) ("When a statute does not provide a definition, words and phrases in a particular statute are to be construed according to their common usage. . . . To ascertain that usage, we look to the dictionary definition of the term." [Internal quotation marks omitted.]).

"The term supersede is defined with substantial similarity in a number of dictionaries, each indicating that its use presumes that it takes the place of something else in existence at that time. For example, Merriam-Webster's Collegiate Dictionary (10th Ed. 1993) defines supersede as 'to cause to be set aside . . . to force out of use as inferior . . . to take the place, room, or position of . . . [and] to displace in favor of another . . . .' The American Heritage Dictionary of the English Language (3d Ed. 1992) defines supersede as '[t]o take the place of; replace . . . [t]o cause to be set aside, especially to displace as inferior or antiquated.' See also Black's Law Dictionary (9th Ed. 2009) (defining supersede as, inter alia, '[t]o annul, make void, or repeal by taking the place of')." *Levine* v. *Sterling*, 300 Conn. 521, 532–33, 16 A.3d 664 (2011).

Applying this definition, we conclude that the charter amendments do not violate § 7-301 because they do not replace any of the volunteer fire companies, including Long Ridge, with the Stamford Fire Department. Rather, they expressly provide that each company will continue to operate under the general direction of its chief, and retain its underlying organizational structure, membership, property, and income.[8] Thus, although the volunteer companies now occupy a different position in the organizational hierarchy of the city's public safety infrastructure, and as a result, no longer exercise *complete* autonomy over their firefighting operations under the amended charter provisions, they remain the primary entities responsible for providing firefighting services in their respective fire service districts.

Accordingly, we conclude that § 7-301 does not prohibit the Stamford Fire Department from superseding the volunteer fire companies because that statute pertains only to fire departments established by ordinance. Even assuming that the statute did pertain to fire departments established by municipal charters, we conclude that the charter amendments did not cause the Stamford Fire Department to supersede any of the volunteer

fire companies.

### III

Finally, the plaintiffs claim that the charter amendments violate the takings clause of the fifth amendment to the United States constitution.[9] Specifically, they claim that the amendments constitute a per se regulatory taking because they deprive Long Ridge of all economically beneficial use of its property by forcing it to either participate in the Stamford Fire Department or cease operating as a fire department.[10] Further, Teitelbaum argues that the amendments deprive him of his contractual property interest in his position as chief of Long Ridge. We conclude that both of these claims are without merit.

We begin by setting forth the applicable legal principles and standard of review that guide our review of the plaintiffs' takings claim. "[A] regulatory taking— also known as inverse condemnation—occurs when the purpose of government regulation and its economic effect on the property owner render the regulation substantially equivalent to an eminent domain proceeding and, therefore, require the government to pay compensation to the property owner." (Internal quotation marks omitted.) *Miller* v. *Westport*, 268 Conn. 207, 209 n.2, 842 A.2d 558 (2004). "Whether private property has been taken by inverse condemnation is a question of law subject to our plenary review. . . . The trial court's conclusions must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case." (Citation omitted; internal quotation marks omitted.) *Bristol* v. *Tilcon Minerals, Inc.*, 284 Conn. 55, 83, 931 A.2d 237 (2007).

"The [United States] Supreme Court has generally eschewed any set formula for identifying regulatory takings, instead preferring to engage in essentially ad hoc, factual inquiries to determine in each case whether the challenged property restriction rises to the level of a taking. . . . Paramount to the inquiry are the familiar factors set forth in *Penn Central Transportation Co.* v. [*New York City*], 438 U.S. 104, 124, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978). Primary among those factors are [t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations. . . . Also telling, is the character of the governmental action, particularly whether it amounts to a physical invasion or appropriation of property or instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good. . . .

"Although these factors govern most regulatory takings challenges, the [United States] Supreme Court has also identified two types of regulatory action that are

treated as per se takings for Fifth Amendment purposes and therefore require no case-specific weighing of the *Penn Central* factors. A categorical taking occurs (1) where a regulation compel[s] the property owner to suffer a physical invasion of his property; or (2) where regulation denies all economically beneficial or productive use of land." (Citations omitted; internal quotation marks omitted.) *1256 Hertel Ave. Associates, LLC* v. *Calloway*, 761 F.3d 252, 264 (2d Cir. 2014).

The plaintiffs claim that the charter amendments fall within the second category of per se regulatory takings.[11] They argue that by compelling Long Ridge to either acquiesce in the charter amendments or discontinue providing fire protection services to the city, the amendments deprive Long Ridge of its "sole economic use of its property" by "forcing [it] out of business and depriving it of all material use of its property."[12]

We emphasize again that Long Ridge has no statutory right to provide fire protection services to the city. Its authority derives entirely from the city's municipal powers. Thus, even though the city has consistently allowed it to provide fire protection, Long Ridge's fifth amendment claim fails because it has no basis to assert a protected property interest in its firefighting operations. See *Connecticut Board of Pardons* v. *Dumschat*, 452 U.S. 458, 465, 101 S. Ct. 2460, 69 L. Ed. 2d 158 (1981) ("[a] constitutional entitlement cannot be created—as if by estoppel—merely because a wholly and expressly discretionary state privilege has been generously in the past" [emphasis omitted; internal quotation marks omitted]); *Med Corp., Inc.* v. *Lima*, 296 F.3d 404, 409 (6th Cir. 2002) ("a party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary").

Even assuming, however, that Long Ridge has a protected property interest in its continued provision of fire protection to the city, the plaintiffs' argument finds no support in the charter's text or in its natural effect. As previously discussed, the amendments expressly permit Long Ridge to continue providing fire protection services to the city under the general direction of Teitelbaum. Although they now require the plaintiffs to do so under the supervision of the fire chief and the assistant chief for volunteer service firefighters, that change in the degree of autonomy delegated to the plaintiffs is a far cry from a complete deprivation of all economically beneficial or productive use of their property. "[T]he denial of one traditional property right does not always amount to a taking. At least where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety." *Andrus* v. *Allard*, 444 U.S. 51, 65–66, 100 S. Ct. 318, 62 L. Ed. 2d 210 (1979). Because Long Ridge maintains significant—

even if not complete and unfettered—autonomy to continue using its private property to continue providing fire protection services to the city, we conclude that the charter amendments do not unconstitutionally take that property in violation of the fifth amendment.

The plaintiffs' final argument is that the charter amendments unconstitutionally take Teitelbaum's private contractual rights to be chief of Long Ridge. Specifically, the plaintiffs argue that "[c]ontracts are property within the meaning of the taking[s] clause," and that "Teitelbaum, pursuant to [Long Ridge's] bylaws, and [Long Ridge] itself, have a valid contract interest in their respective rights and obligations under [Long Ridge's] bylaws." They further argue that the amendments "subjugat[e] all of Teitelbaum's rights and powers . . . to the control of the city," and "[strip] him of his authority of command within and for [Long Ridge] and subjugat[e] his rank in all respects to the newly created positions of 'Assistant Chief [for Volunteer Service Firefighters]' and '[Fire] Chief.' " The end result of the amendments, the plaintiffs argue, is that "Teitelbaum no longer has command control over his fire department's apparatus, equipment and personnel . . . he no longer controls the issuance of rules and orders concerning the use, care and custody of the [Long Ridge] fire stations, fire apparatus and equipment . . . he is no longer in charge of who and where to house, station and assign firefighters . . . [and] his rights as chief under [Long Ridge's] bylaws have been taken away from him."[13]

The text of the charter and its natural effect again demonstrate that the plaintiffs have significantly overstated the scope of the amendments' effect on their operations. Section C5-40-3 (g) of the charter provides in relevant part that the volunteer chiefs "shall have primary firefighting responsibilities in their Fire Service Districts and primary responsibilities over the personnel and equipment assigned to their Fire Service Districts, subject to the supervision and direction of the Assistant Chief [for] Volunteer [Service Firefighters] and the Fire Chief." No reasonable construction of this provision accords with the conclusion that Teitelbaum has been "stripped of his authority of command," or that he no longer has "command and control" over Long Ridge's apparatus, equipment, and personnel. Rather, the only restriction the amendments place on Teitelbaum is that he now falls within the chain of command of the Stamford Fire Department under the fire chief and the assistant chief for volunteer services firefighters. Although the plaintiffs appear to argue that Teitelbaum possessed a contractual right under Long Ridge's bylaws to direct the companies' fire protection services free from oversight, we again observe that only the city, pursuant to its broad statutory authority, could delegate that right to the plaintiffs. Stated differently, Teitelbaum and Long Ridge cannot grant to each other by private

contract a right that they did not already possess. Accordingly, we conclude that the charter amendments did not take Teitelbaum's contract in violation of the fifth amendment to the United States constitution.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] These appeals arise out of two separate actions that were consolidated for trial. The plaintiffs in the first action, *Turn of River Fire Dept.*, *Inc.*, v. *Stamford*, Superior Court, judicial district of Stamford, Docket No. CV-13-6016962-S, consisted of Turn of River Fire Department, Inc., Long Ridge, Springdale Fire Company, Inc., Teitelbaum, Peter Bernstein, and Antonio L. Olive, Jr. The defendants in that action were the city and Jankowski.

In the second action, *Stamford* v. *Turn of River Fire Dept.*, *Inc.*, Superior Court, judicial district of Stamford, Docket No. CV-13-6017507-S, the plaintiffs consisted of the city, Conte, Callahan, and Jankowski. The defendants were Turn of River Fire Department, Inc., Long Ridge, Springdale Fire Company, Inc., Frank Jacobellis, Teitelbaum, Shawn Fahan, Olive, and Bernstein.

The trial court issued a single memorandum of decision disposing of the claims raised in both cases. All parties to each case initially appealed from the court's judgments. The city, Jankowski, Conte, and Callahan subsequently withdrew all of their claims in both cases. The remaining claims in this appeal are raised only by Long Ridge and Teitelbaum. All other parties have either withdrawn their appeals or do not advance any claims. For convenience, we refer to Long Ridge and Teitelbaum collectively as the plaintiffs and individually by name, and the city, Jankowski, Conte, and Callahan collectively as the defendants and individually by name.

[2] The plaintiffs also claim that the charter amendments violate their rights to procedural and substantive due process. We decline to review their procedural due process claim because it is comprised almost entirely of conclusory assertions without any supporting analysis. For instance, the plaintiffs make no attempt to identify any actual deficiencies in the process afforded to them, nor do they apply the traditional three part balancing test set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), to determine "what safeguards the federal constitution requires to satisfy procedural due process." (Internal quotation marks omitted.) *Frauenglass & Associates*, *LLC* v. *Enagbare*, 149 Conn. App. 103, 110, 88 A.3d 1246, cert. denied, 314 Conn. 927, 101 A.3d 273 (2014). It is well established that "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Citibank*, *N.A.* v. *Lindland*, 310 Conn. 147, 165, 75 A.3d 651 (2013). Accordingly, we deem the plaintiffs' procedural due process claim abandoned due to inadequate briefing, and decline to review it.

With respect to their substantive due process claim, which is also inadequately briefed, the plaintiffs concede that "substantive due process has been held to protect against only the most arbitrary and conscience shocking governmental intrusions into the personal realm . . . ." (Internal quotation marks omitted.) *Greater New Haven Property Owners Assn.* v. *New Haven*, 288 Conn. 181, 202, 951 A.2d 551 (2008). This is not such a case.

[3] Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) defines "company" as, inter alia, "a firefighting unit."

[4] The defendants also initially appealed from the court's judgments, but subsequently withdrew those appeals. See footnote 1 of this opinion.

[5] Section C5-40-3 of the charter is entitled "Fire Department." Subsection (a) of § C5-40-3 of the charter establishes the Stamford Fire Department by providing that "[t]here shall be a Fire Department for the City of Stamford . . . ." Subsection (b) sets forth the fire chief's various powers and duties, which include, among others, administering, supervising, and disciplining members of the fire department, establishing proper firefighting techniques, making rules and regulations with the approval of the fire commission, and exercising proper care and custody over all property, apparatus, and equipment of the department. Subsection (c) addresses the department's general membership. Subsection (d) creates the positions of assistant chief

for service firefighters and assistant chief for volunteer service firefighters. The provision provides that both assistant chiefs shall be appointed by the fire chief, with the assistant chief for volunteer services being chosen from a "pool of three nominees nominated by a majority vote of the Chiefs of the volunteer fire companies of Stamford." Stamford Charter, c. 4, § C5-40-3 (d). Subsection (e) establishes the position of fire marshal within the fire department. Subsection (f) addresses the roles of the volunteer fire companies. Subsection (g) defines the responsibilities of the volunteer fire company chiefs. Finally, subsection (h) describes the fire service districts within the city.

[6] The defendants also argue that the management of municipal fire departments is a matter of local concern under the Home Rule Act, General Statutes § 7-187 et seq., and, therefore, the charter amendments must prevail over § 7-301. In light of our agreement with the other two arguments advanced by the defendants, we decline to reach this argument.

[7] We note, however, that a municipal charter may prescribe alternative methods for enacting ordinances. See General Statutes § 7-157 (a) ("[c]ities and other municipalities whose charters provide for the manner in which they may enact ordinances may enact ordinances in such manner").

[8] Section C5-40-3 (f) of the charter expressly provides that the companies will continue to exist as "important components of the Stamford Fire Department." Section C5-40-3 (g) of the charter provides that the companies' respective chiefs "shall have primary firefighting responsibilities in their Fire Service Districts and primary responsibilities over the personnel and equipment assigned to their Fire Service Districts, subject to the supervision and direction of the Assistant Chief [for] Volunteer [Service Firefighters] and the Fire Chief."

[9] Although the plaintiffs also raise the claim that the charter amendments violate article first, § 11, of the Connecticut constitution, they do not claim that our state constitutional affords greater protections than the federal constitution, nor have they separately analyzed their state constitutional claim in their appellate brief. "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the[y] . . . [provide] an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the [plaintiffs'] claim." (Internal quotation marks omitted.) *Barros* v. *Barros*, 309 Conn. 499, 507 n.9, 72 A.3d 367 (2013).

[10] The plaintiffs also claim that the amendments constitute an unconstitutional taking because they cause them to suffer a permanent physical invasion of their property. As we determined in part I of this opinion, however, the amendments do not require the plaintiffs to participate in the Stamford Fire Department or utilize any of their privately owned property for that purpose. Accordingly, we conclude that the amendments do not cause the plaintiffs to suffer a permanent physical invasion of their property.

[11] It remains an open question whether personal property may be subject to a per se regulatory taking under existing United States Supreme Court precedent. See *1256 Hertel Ave. Associates, LLC* v. *Calloway*, supra, 761 F.3d 264 (noting that "decisions of the circuit courts have not reached a clear consensus on how broadly to apply [the] per se [takings] rule"). Indeed, the United States Supreme Court has acknowledged that "in the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings, [a property owner] ought to be aware of the possibility that new regulation might . . . render his property economically worthless . . . ." *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003, 1027–28, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992). Neither party has briefed the issue in the present case, however, and we need not answer the question now. Even if Long Ridge's personal property, such as its vehicles and other equipment, could be subject to a per se regulatory taking, we conclude that no such taking occurred.

[12] The plaintiffs do not advance any claim that the charter amendments constitute a taking under *Penn Central Transportation Co.* v. *New York City*, supra, 438 U.S. 104, nor do they make any attempt to apply the *Penn Central Transportation Co.* factors to the facts of this case. Accordingly, we limit our analysis to the plaintiffs' claim that the amendments constitute a per se regulatory taking.

[13] Beyond asserting the broad proposition that "contract rights are property," the plaintiffs make virtually no attempt to develop or advance their argument that Teitelbaum possesses any property interest in his volunteer position as chief of Long Ridge. We observe that a number of decisions from the federal circuit courts call this assertion into doubt. See, e.g., *Hale*

v. *Bexar County*, 342 Fed. Appx. 921, 927 (5th Cir. 2009) ("there is no constitutionally cognizable interest in a volunteer position"), cert. denied, 558 U.S. 1149, 130 S. Ct. 1146, 175 L. Ed. 2d 974 (2010); *Versarge* v. *Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993) (concluding property interest in volunteer firefighter position was "de minimis"); *Hyland* v. *Wonder*, 972 F.2d 1129, 1141 (9th Cir. 1992) (plaintiff possessed "no constitutionally cognizable property interest in the perpetuation of his volunteer status"), cert. denied, 508 U.S. 908, 113 S. Ct. 2337, 124 L. Ed. 2d 248 (1993). We need not decide, however, whether Teitelbaum maintains some constitutionally protected interest in his position as chief of Long Ridge, because we conclude that the charter amendments do not infringe upon that alleged interest.